```
UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------- x
In re:                                                  :   Case No. 22-22608 (JLG)
                                                        :   Chapter 11
Branded Operations Holdings, Inc., et al.,              :
                                                        :
                                      Debtors.¹         :   (Jointly Administered)
------------------------------------------------------- x
```

# MEMORANDUM DECISION DENYING MOTION
# FOR ENTRY OF AN ORDER MODIFYING THE PLAN OF REORGANIZATION

**APPEARANCES:**

Seward & Kissel LLP
*Counsel to the Plan Administrator Patrick J. Bartels*
One Battery Park Plaza
New York, NY 10004
By:  Brian P. Maloney
     Catherine V. LoTempio


Cross & Simon LLP
*Counsel to the Trustee of the Endo Opioid Personal Injury Trust Edgar C. Gentle, III*
1105 North Market Street, Suite 901
Wilmington, DE 19801
By:  Michael L. Vild


Charles Elliott Anderson
*Appearing Pro Se*
1205 California Ave. #2
Las Cruces, New Mexico 88001

---

¹ The last four digits of Debtor Branded Operations Holdings Inc.'s tax identification number are 6945. Due to the large number of debtors in these Chapter 11 Cases, a complete list of the debtor entities and the last four digits of their federal tax identification numbers is not provided herein. A complete list of such information may be obtained on the website of the Debtors' claims and noticing agent at https://restructuring.rakroll.com/Endo. The location of the Debtors' service address for purposes of these Chapter 11 Cases is: 1400 Atwater Drive, Malvern, PA 19355.

**HON. JAMES L. GARRITY, JR.**
**U.S. BANKRUPTCY JUDGE**

## INTRODUCTION[2]

Charles Elliot Anderson ("Mr. Anderson") is a self-described "surviving victim" and personal injury claimant in these Chapter 11 Cases. The matter before the Court is his motion, filed pro se, seeking an order modifying the Debtors' Fourth Amended Plan and granting him certain "equitable relief" (the "Motion").[3] Under the Plan, Patrick J. Bartels ("Mr. Bartels" or the "Plan Administrator") is the Plan Administrator of the remaining debtors of Endo International plc ("Endo") and its Debtor affiliates, (collectively, the "Remaining Debtors") in these Chapter 11 Cases. He filed an objection to the Motion (the "Objection").[4] Edgar C. Gentle, III ("Mr. Gentle" or the "PI Trustee") is the trustee of the Endo Opioid Personal Injury Trust (the "PI Trust") formed under the Plan. He filed a response to the Motion (the "PI Trustee Response").[5] Mr. Anderson

---

[2] Capitalized terms used but not otherwise defined herein shall have the meaning ascribed to such terms in the confirmed *Fourth Amended Joint Chapter 11 Plan of Reorganization of Endo International plc and its Affiliated Debtors*, Endo ECF No. 3849 (the "Fourth Amended Plan," or the "Plan") or the *Findings of Fact, Conclusions of Law, and Order (i) Confirming the Fourth Amended Joint Chapter 11 Plan of Reorganization of Endo International PLC and its Affiliated Debtors and (II) Approving the Disclosure Statement with Respect Thereto*, Endo ECF No. 3960 (the "Confirmation Order"). References to "Endo ECF No. __" are to documents filed on the electronic docket of Case No. 22- 22549. References to "ECF No. __" are to documents filed on the electronic docket of Case No. 22-22608.

[3] *Motion: For Modification of the Plan of Reorganization and for Equitable Relief to: 1) Acceptance of Allowed Claim, 2) Designate Surviving Victim Status, 3) Establish Separate, Segregated Protective Trust for all "Surviving Victims" and 4) Directing Full Payment of Allowed Claim in the Amount of $5 Million Dollars $(5,000,000)*, ECF No. 56.

[4] *Plan Administrator's Objection to Motion to Modify Plan*, ECF No. 59.

[5] *Personal Injury Trustee's Response to Charles Elliot Anderson Jr.'s Motion for Modification of the Plan and Reorganization and for Equitable Relief to 1) Acceptance of Allowed Claim, 2) Designate Surviving Victim Status, 3) Establish Separate Segregated Protective Trusts for all "Surviving Victims" and 4) Full Payment of Allowed Claim in the Amount of 5 Million Dollars ($5,000,000)*, ECF No. 60.

2

filed two replies to the responses and in further support of the Motion (the "First Reply"[6] and the "Second Reply"[7]).

The Court conducted a hearing on the Motion. At the hearing, Mr. Anderson appeared pro so, and the Plan Administrator and PI Trustee appeared through counsel. For the reasons set forth herein, the Court denies the Motion.

## JURISDICTION

This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the Amended Standing Order of Referral of Cases to Bankruptcy Judges of the United States District Court for the Southern District of New York (M-431), dated January 31, 2012 (Preska, C.J.). This matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2). In addition, pursuant to the Confirmation Order and Plan, this Court has retained jurisdiction over the Chapter 11 Cases and all matters arising out of, or related to, the Chapter 11 Cases and the Plan, including, among other things, to (a) enter and implement such orders as may be necessary or appropriate to execute, implement, or consummate the provisions of the Plan, the Confirmation Order, and any agreements and documents in connection with or contemplated by the Plan, the Confirmation Order, the Purchase and Sale Agreement, and the Disclosure Statement; and (b) enter a final decree closing each of the Chapter 11 Cases. *See* Plan § 13.1.

---

[6] *Response Of Charles Elliott Anderson Jr. to Objections to: Motion for Modification of The Plan of Reorganization and for Equitable Relief*, ECF No. 63.

[7] *Response to Plan Administrator Objection to Modify Plan of Reorganization and for Equitable Relief*, ECF No. 66.

3

**BACKGROUND**

**The Debtors' Plan**

On August 16, 2022, Endo and seventy-five of its affiliated Debtors each commenced voluntary chapter 11 cases in this Court (the "Chapter 11 Cases") by filing a petition for relief under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code"). On May 25, 2023, and May 31, 2023, certain additional Debtors also commenced Chapter 11 Cases by filing petitions for relief under chapter 11 of the Bankruptcy Code. The Chapter 11 Cases are being jointly administered.

On March 22, 2024, the Court entered the Confirmation Order confirming the Fourth Amended Plan and on April 23, 2024 (the "Effective Date),[8] the Plan became effective. The Plan calls for the appointment of a Plan Administrator on or after the Effective Date by the Debtors and on consent of the Required Consenting Global First Lien Creditors in consultation with the Committees and the Future Claims Representative. *See* Plan, § 5.7. Mr. Bartels was appointed and is acting as Plan Administrator. The Plan also called for the creation of the PI Trust and the appointment of the PI Trustee. *See id.* § 6.8. Mr. Gentle was appointed and is acting as PI Trustee.

The record is clear that the Plan is the product of months of negotiations overseen by a Court-appointed Mediator, among the Debtors and their stakeholders, including representatives of tort victims, states and municipalities, official committees and others. Objection ¶ 5. The Opioid Claimants' Committee (the "OCC") is one such committee. As the Plan Administrator notes, in support of Plan confirmation, the OCC reported that the Plan provides for more than $600 million

---

[8] *Notice Of (I) Entry of Confirmation Order, (II) Occurrence of Effective Date, and (III) the Administrative Expense Claims Bar Date*, ECF No. 4212.

4

in net present value for Opioid Claimants. *Id*. at 6.[9] The Plan seeks to address public health concerns stemming from opioid use and provides compensation to victims through distributions to impacted parties, including states, tribes and private claimants. *Id.* In broad strokes, the Plan calls for (i) a going concern sale of Endo's business to newly formed entities ultimately owned 96.30% by the Debtors' first lien creditors, with the remaining percentage held by a portion of the Debtors' general unsecured creditors; and (ii) more than a dozen settlements negotiated among the Debtors' key stakeholders, given effect through the establishment of trusts and/or sub-trusts. *See generally* Plan §§ 4.3, 5.20, art. VI.

To that end, the Plan creates and funds eighteen trusts and sub-trusts for the benefit of the Debtors' many diverse stakeholders—from public and private opioid claimants, mesh claimants, potential future tort claimants, unsecured creditors and prepetition antitrust plaintiffs. *See* Plan §§6.1-6.20. As relevant to the Motion, the Plan provides for the channeling of present private opioid claims to the PPOC Trust. *Id.* § 6.7. The claims are further channeled from the PPOC Trust to the PPOC Sub-Trusts for the benefit of various claimant groups**.** *See id*. The beneficiaries of the sub-trusts obtain payment for their claims in accordance with the applicable trust distribution procedures ("TDPs"). *Id.* §§ 1.1.411, 6.7.

On May 6, 2024, the PI Trust received Mr. Anderson's personal injury claim submission. PI Trustee Response ¶ 1. Upon review, the PI Trust determined that Mr. Anderson's personal injury claim submission complies with all requirements set forth in the Endo PI Trust Distribution Procedures ("PI TDP") and is therefore compensable under the PI TDP framework. *Id.* ¶ 2. On December 13, 2024, the PI Trust confirmed over email that Mr. Anderson has an Allowed PI

---

[9] *Citing Statement of the Official Committee of Opioid Claimants in Support of Confirmation of the Third Amended Joint Chapter 11 Plan of Reorganization of Endo International plc and Its Affiliated Debtors and in Response to Certain Objections Thereto*, ECF No. 3785 at ¶ 3.

5

Opioid Claim ("Allowed Claim") under the PI TDP. *Id.* ¶ 3. Specifically, Mr. Anderson holds an allowed Class 7A-PI Opioid Claim under the Plan channeled to the PI Trust under the Plan. *See* Plan § 4.14.

Under the PI TDP framework, all Allowed Claims will be paid a simple pro rata share of the distributable proceeds held by the PI Trust based on the total number of timely Allowed PI Opioid Claims (the "Award"). PI Trustee Response ¶ 4. The distributable proceeds currently held by the PI Trust is approximately $39 million. *Id.* ¶ 5. Moreover, Allowed PI Opioid Claims who granted (or be deemed to have granted pursuant to the Plan) the Non-GUC Releases during the Voting Period will receive an additional award that is four times the Pro Rata Payment (the "Non-GUC Multiplier"). *Id.* ¶ 6. The PI Trust's records show that Mr. Anderson timely granted the Non-GUC Release and is entitled to the Non-GUC Multiplier in calculating his Allowed PI Opioid Claim. The Trust is in the process of calculating the estimated pro rata Award amount and the Non-GUC Multiplier amount. Once the Trust has determined these amounts, the lien resolution process will begin. *Id.* ¶¶ 7-8.

**The Motion**

In the Motion, Mr. Anderson seeks to modify the Fourth Amended Plan to establish a new "Surviving Victims" trust that would monetize and distribute certain assets of the Debtors (including litigation claims) to pay, in full, his claims, and the claims of similarly situated claimants. Specifically, he seeks an order of the Court:

- Allowing and directing payment of his $5 million claim in full, inclusive of his cure claim.
- Recognizing his surviving victim status by designating and recognizing him as a "surviving victim" as "defined within the meaning of the Plan and applicable law."[10]

---

[10] The Plan does not include a defined term of "surviving victim." Mr. Anderson cites to Webster's Dictionary for the definitions of "surviving" and "victim." Motion at 5. He argues that this recognition "acknowledges the unique

6

- Establishing a separate, segregated protective trust for the benefit of all "surviving victims," ensuring that sufficient funds are available to compensate the "surviving victims" for their ongoing suffering and to provide for their future needs, including the generational effect on "surviving victims" kids, including the payment of cure claims.
- Directing Endo PI and its trustee to pay in full his allowed claim.

Motion at 1-2.

Mr. Anderson argues that the Court should direct that his $5 million claim be paid in full because the claim is supported by "substantial documentation of permanent injuries and losses, including hospital records, prescription histories, and personal testimony detailing the severe consequences of opioid addiction." *Id.* at 4. He says that he should be recognized and designated a "surviving victim," because, pursuant to dictionary definition, his case exemplifies the concept of a "surviving victim." *Id.* at 5. He maintains that recognizing him as a surviving victim is "crucial to ensure that the Plan . . . addresses the unique needs of individuals like him who require ongoing support and resources to rebuild their lives." *Id.* He says doing so will help to ensure that the Plan is fair and equitable to all creditors. *Id.* at 6.

Mr. Anderson asserts that the creation of a separate protective trust for surviving victims is essential to guarantee surviving victims receive full compensation, including for cure claims. *Id.* He contends that the trust should be funded through various sources, including the proceeds from the sale of all Endo's assets, including "executive bonuses fined," a percentage of the "total settlement amount" including from sub-trusts, any assets recovered through litigation pursuing fraudulent transfers or other misconduct, and a specific percentage of "all attorney/law firm trustee fees" billed. *Id.* at 6-7. He says that fees should be collected as "Court fines" for the "outrageous

---

and [devastating] impact of the opioid crisis on individuals like [Mr. Anderson] whom [sic] suffer from the long-term consequences of opioid addiction, including physical and mental health challenges, loss of family, incarceration, and generational impact on [my] surviving daughter . . . ." *Id.* at 3.

7

amount of fees, designating all attorney fees be subject to" pro bono status. *Id.* at 7. Mr. Anderson also asserts that he should be paid from the assets of the proposed "protective trust." *Id.*

Mr. Anderson continues that "[r]einstatement of [his] rights as a victim is necessary to remedy the impairments caused by the opioids [manufactured] and marketed by Endo . . . ." *Id.* at 7. He seeks "full compensation and resources for long-term recovery . . . ." *Id.* at 8. Mr. Anderson also seeks to have this Court pierce the Endo's corporate veil and hold its shareholders and directors "accountable for the devastating consequences caused by the production and marketing of opioid products." *Id.* He says that Endo has hidden assets in order to minimize payouts to actual opioid victims. *Id.* at 9.

In support of the Motion, Mr. Anderson cites to the "fair and equitable" standard in section 1129(a)(3) of the Bankruptcy Code. *Id.*[11] He argues that, in the context of an opioid-related bankruptcy, a reorganization plan will be fair and equitable only if it prioritizes the needs of the surviving victims. *Id*. Mr. Anderson also cites to section 510(c) of the Bankruptcy Code in support of the proposition that certain claims may be subordinated to ensure that the surviving victims receive adequate compensation. *Id.* at 10. He points to the district court's decision in *Harrington v. Purdue*, 2024 WL 3809804 (S.D.N.Y. 2024), as an example of the court prioritizing the surviving victims of the opioid epidemic in drafting the chapter 11 plan. *Id.*[12] Without citing any support, Mr. Anderson also argues that "[n]umerous cases across the country have now

---

[11] Section 1129(a)(3) does not speak to whether a reorganization plan is "fair and equitable." It addresses whether a plan "has been proposed in good faith and not by any means forbidden by law." 11 U.S.C. § 1129(a)(3). Section 1129(b)(1) addresses the "fair and equitable" requirement for cram-down plans.

[12] The Court is unable to locate a case with the citation "2024 WL 3809804," or a case with the caption of *Harrington v. Purdue* in the district court in 2024. The Court assumes Mr. Anderson intended to cite to *In re Purdue Pharma L.P.*, No. 19-23649, 2024 WL 4894349, at *1 (S.D.N.Y. Nov. 26, 2024). In part, in that case, the court stated: "What would be meaningful to the citizens of Maryland who have been and are being impacted by the opioid crisis is money—money to settle individual wrongful death and personal injury claims, and money to fund anti-opioid programs and addiction treatment." *Id.* at *9.

8

successfully applied the public nuisance theory to hold opioid manufacturers and distributors accountable for their role in the opioid crisis . . . ." *Id.* at 11. Mr. Anderson attaches several exhibits to his Motion.[13]

### The Objection

In substance, the Plan Administrator contends that Mr. Anderson is bound by the Fourth Amended Plan and Confirmation Order, and that there are no avenues for him to challenge or modify the Plan. He notes that Mr. Anderson did not appeal the Confirmation Order and, pursuant to rule 8002(c) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rule"), is now time-barred from doing so. Objection ¶ 11. He also contends that Mr. Anderson is time-barred from seeking to revoke the Confirmation Order under section 1144 of the Bankruptcy Code, and that, in any event, he has put forth no sufficient basis to revoke the order, and none exists. *Id.* ¶ 12. Finally, the Plan Administrator argues that Mr. Anderson lacks standing to seek to modify the Plan under section 1127(b) of the Bankruptcy Code, and moreover, that he is barred from doing so because the Plan has been substantially consummated. *Id.* ¶ 13.

### The First Reply

Mr. Anderson asserts that the Court should grant the relief he is seeking in the Motion "particularly in light of new evidence of fraudulent concealment and inequitable conduct by the Debtors, which warrants the application of the Court's equitable powers." First Reply at 1. He argues that the Debtors attempted to conceal assets and minimize payouts to opioid victims. *Id.* at 2. As support, he attaches a news article he says outlines how Endo spent an inordinate amount of money on attorney's fees and executive compensation while simultaneously depleting the cash

---

[13] While his list of exhibits includes seven exhibits identified as exhibits (A)-(G), his submission only includes exhibits identified as (A) and (B). Exhibit (A) is an allowed claim notification from Endo PI Trust dated December 13, 2024, and exhibit (B) is his vote rejecting the Plan and opting in to the opt-in releases. Motion, Ex. A-B.

available to compensate individual victims.[14] *Id.* at 2. Mr. Anderson also states that his daughter is facing difficulties due to the opioid crisis that may carry significant implications for her future. *Id.* at 2-3.

Mr. Anderson alleges, for the first time, that the Debtors' officers and directors breached their fiduciary duties to Debtors' creditors. *Id.* at 3. He also contends that Debtors fraudulently transferred estate assets to third parties with the intent to hinder, delay, or defraud creditors or, alternatively, transferred them for less that reasonably equivalent value, at a time when they were insolvent. *Id.* at 3-4. Mr. Anderson also submits that "[i]n addition to the relief previously requested [in the Motion] . . . the Court, in its equitable authority, should also include an order directing the Debtors to pay any and all liens or deficiencies that were a direct result of the opioid crisis." *Id.* at 3. He says "[t]his Court possesses the authority to subordinate claims under 11 U.S.C. § 510(c) 'under principles of equitable subordination.'" *Id.* He also lists a number of cases he argues support his claims for relief.[15]

**The Second Reply**

Mr. Anderson restates the arguments set forth in his First Reply and asserts that equitable relief is appropriate due to the impact the opioid crisis has had on his life and the life of his daughter. Second Reply at 3-6. Mr. Anderson argues that the Court should grant the relief requested "particularly in light of new evidence of fraudulent concealment and inequitable conduct by the Debtors . . . ." *Id.* at 3. As support for his arguments, Mr. Anderson cites to his experience

---

[14] *Response to Objection Exhibit (c). Full "Problica" – Article Dated Dec. 17th, 2024*, ECF No. 65.

[15] Mr. Anderson cites to: *Pepper v. Litton*, 308 U.S. 295 (1939); *Williams v. Marlar (In re Brinsmade)*, 374 B.R. 52 (Bankr. M.D. Fla. 2007); *In re Tristar Esperanza Properties, LLC*, 544 B.R. 859 (Bankr. C.D. Cal. 2016) (the Court believes that the correct citation is *In re Tristar Esperanza Properties, LLC*, 488 B.R. 394 (B.A.P. 9th Cir. 2013), *aff'd*, 782 F.3d 492 (9th Cir. 2015)); *In re Bernard L. Madoff Investment Securities LLC*, 458 B.R. 43 (Bankr. S.D.N.Y. 2011) (the Court believes the intended citation is to *In re Bernard L. Madoff Inv. Sec. LLC*, 458 B.R. 87 (Bankr. S.D.N.Y. 2011)).

10

with opioid addiction, the experience of his daughter, the potentially fraudulent activity of the Debtors, and his allowed claim status. *Id.* at 3-5. He again asserts claims of breach of fiduciary duty and fraudulent transfer. *Id.* at 6-7. He cites to the same cases and statutes cited to in his First Reply. *Id.* at 7-8.

## **ANALYSIS**

The Court recognizes that Mr. Anderson is proceeding pro se and, as such, the Court must construe his pleadings liberally and interpret them to raise the strongest arguments they suggest. *See Rosa v. Doe*, 86 F.4th 1001, 1008 (2d Cir. 2023); *see also Chinniah v. FERC*, 62 F.4th 700, 702 (2d Cir. 2023) ("As a pro se plaintiff, [claimant] is entitled to liberal construction of his pleadings and briefs."). However, as explained below, even in that light, Mr. Anderson is not entitled to the relief he is seeking in the Motion.[16]

Pursuant to section 1141(a) of the Bankruptcy Code, a confirmed plan is a contract binding on all creditors whether they voted for or against the Plan. *See* 11 U.S.C. § 1141(a) ("[T]he provisions of a confirmed plan bind the debtor . . . and any creditor . . . whether or not the claim . . . of such creditor . . . is impaired under the plan and whether or not such creditor . . . has accepted the plan."); *see also Texaco Inc. v. Sanders (In re Texaco Inc.)*, 182 B.R. 937, 950 (Bankr. S.D.N.Y. 1995) (noting the by application of section 1141(a), "the provisions of [Texaco's] Plan

---

[16] Mr. Anderson raised his claims of breach of fiduciary duty, fraudulent transfer, and equitable subordination for the first time in his reply papers. It is well settled that "reply papers may properly address new material issues raised in the opposition papers so as to avoid giving unfair advantage to the answering party. However, [a]rguments may not be made for the first time in a reply brief." *Bravia Cap. Partners, Inc. v. Fike*, 296 F.R.D. 136, 144 (S.D.N.Y. 2013) (internal quotation marks omitted). Even pro so litigants are "required to inform themselves regarding procedural rules and to comply with them." *Azkour v. Haouzi*, No. 11 Civ. 5780, 2012 WL 3561071, at *1 (S.D.N.Y. Aug. 17, 2012) (quoting *Edwards v. INS*, 59 F.3d 5, 8 (2d Cir. 1995)). Nonetheless, the Court finds no merit to those claims because it is likely that they are derivative claims that belong to the PI Trust or were transferred to the GUC Trust as part of the GUC Trust Litigation Consideration, which included "all Claims and Causes of Action held by the Debtors and their Estates against the GUC Excluded Parties (and any privileges attendant to such Claims and Causes of Action), including . . . the Excluded D&O Parties, solely with respect to actions taken prior to August 1, 2019 . . . ." Plan § 1.1.239.

11

are binding on all creditors holding claims against Texaco."); *Matter of Shickles*, 612 B.R. 444, 453 (Bankr. N.D. Ala. 2019) ("[O]nce a Chapter 11 plan is confirmed, it is binding on both the debtor and his creditors."). Mr. Anderson voted to reject the Plan.[17] Nonetheless, he is bound by the Plan.

Still, in the Motion, in part, Mr. Anderson purports to object to the treatment of his claim under the Plan. By its terms, on the Effective Date, the Plan became binding on all parties, including all holders of claims. *See* Plan § 14.1.[18] In the Confirmation Order, the Court found that the Plan meets the standards set forth in section 1129 of the Bankruptcy Code. *See* Confirmation Order ¶ 2. Any objections to Plan confirmation were "overruled on the merits with prejudice." *Id.* ¶ 3.

Bankruptcy Rule 8002(a) directs that an appeal of a final order must be filed within fourteen days after entry of the order. Fed. R. Bankr. P. 8002(a). Pursuant to Bankruptcy Rule 9006(b)(3), the Court may extend the time provided to appeal an order "only to the extent and under the conditions stated in" Bankruptcy Rule 8002. Fed. R. Bankr. P. 9006(b)(3). Under Bankruptcy Rule 8002, a Court may not extend the time to file a notice of appeal from confirmation of a plan under section 1129 of the Bankruptcy Code. Fed. R. Bankr. P. 8002(d)(2)(F).

The Confirmation Order is a final, non-appealable order. Nonetheless, Mr. Anderson seeks to assert objections to the Plan that he could have raised prior to Plan confirmation. However, he is barred from doing so. It is "well-settled that a bankruptcy court's confirmation order is a binding,

---

[17] Anderson annexes a copy of the ballot as Exhibit B to the Motion.

[18] "Upon the occurrence of the Effective Date, the terms of this Plan, the Plan Supplement, and all other Plan Documents shall be immediately effective and enforceable and deemed binding upon the Debtors, their Estates, the Post-Emergence Entities, the Trusts, and any and all holders of Claims or Interests (irrespective of whether such Claims or Interests are Impaired under this Plan and whether holders of such Claims or Interests have accepted or are presumed to have accepted or rejected or deemed to reject this Plan)." Plan § 14.1.

12

final order, accorded full *res judicata* effect[.]" *In re Wolfberg*, 255 B.R. 879, 882 (9th Cir. BAP 2000); *see also In re Worldcom, Inc.*, 401 B.R. 637, 648 (Bankr. S.D.N.Y. 2009) ("As a binding final order, a confirmation order prohibits those parties bound under § 1141(a) or their privies from relitigating any matter that was or could have been raised at confirmation.").

Mr. Anderson seeks to modify the Plan to provide for full payment of his claim, and to designate him as a "surviving victim" and establish a separate, segregated protective trust for "surviving victims." Motion at 3-4. Section 1127(b) of the Bankruptcy Code governs the modification of a confirmed reorganization plan.[19] Under that section, the modification of a confirmed plan is permitted only if:

> (a) it is done by a "proponent of a plan or the reorganized debtor," (b) it occurs before "substantial consummation" of the plan; (c) the plan as modified meets the requirements of sections 1122 and 1123 of the Bankruptcy Code; (d) the proponent complies with the disclosure requirements of section 1125; (e) circumstances warrant such modification; and (f) the court, after notice and a hearing, confirms the modified plan under section 1129 of the Bankruptcy Code.

*In re Celsius Network LLC*, 656 B.R. 327, 337 (Bankr. S.D.N.Y. 2023). Mr. Anderson is not a Plan proponent. As such, he lacks standing and is not eligible to seek to modify the Plan. *See In re Boylan Int'l, Ltd.*, 452 B.R. 43, 48 (Bankr. S.D.N.Y. 2011) ("Modification must be sought by a proper party under section 1127(b)."); *In re Calpine Corp.*, No. 05-60200, 2008 WL 207841, at *6 (Bankr. S.D.N.Y. Jan. 24, 2008) ("As the Objecting Shareholders were not the proponents of

---

[19] Section 1127(b) provides, as follows:

> (b) The proponent of a plan or the reorganized debtor may modify such plan at any time after confirmation of such plan and before substantial consummation of such plan, but may not modify such plan so that such plan as modified fails to meet the requirements of sections 1122 and 1123 of this title. Such plan as modified under this subsection becomes the plan only if circumstances warrant such modification and the court, after notice and a hearing, confirms such plan as modified, under section 1129 of this title.

11 U.S.C. § 1127(b).

the confirmed Plan, they are not authorized under Section 1127(b) to modify the confirmed Plan."). In any event, he cannot state grounds for relief under section 1127(b) because it is undisputed that the Fourth Amended Plan has been substantially consummated. Objection ¶ 13.

Nor may Mr. Anderson revoke the Confirmation Order. Section 1144 of the Bankruptcy Code governs revocation of an order confirming a plan. It states as follows:

> On request of a party in interest at any time before 180 days after the date of the entry of the order of confirmation, and after notice and a hearing, the court may revoke such order if and only if such order was procured by fraud. An order under this section revoking an order of confirmation shall—(1) contain such provisions as are necessary to protect any entity acquiring rights in good faith reliance on the order of confirmation; and (2) revoke the discharge of the debtor.

11 U.S.C. § 1144. Procedurally, Mr. Anderson's request for relief is time-barred.[20] To the merits, "[r]elief under [section] 1144 is discretionary; the Court may but need not revoke the confirmation order if it finds fraud. The Court must consider all of the circumstances, and determine whether revocation of the confirmation can or would lead to an outcome that is more equitable than leaving the order intact." *Salsberg v. Trico Marine Servs., Inc.*, (*In re Trico Marine Servs., Inc.*), 337 B.R. 811, 814 (Bankr. S.D.N.Y.), *adhered to on reargument,* 343 B.R. 68 (Bankr. S.D.N.Y. 2006) (citation and internal quotation marks omitted).

Mr. Anderson does not contend that the Confirmation Order was procured by fraud. In the Confirmation Order, the Court found that the PPOC Trust Documents and the PPOC Sub-Trust Documents and all schedules, exhibits, supplements, and any other attachments thereto, have been negotiated in good faith, at arm's length, and without collusion or fraud, and entry into and consummation of the transactions contemplated by each such document and agreement is in the

---

[20] While the Court may extend the time period to seek revocation pursuant Bankruptcy Rule 9006, the Court may do so only "where the failure to act was the result of excusable neglect." Fed. R. Bankr. P. 9006. Mr. Anderson does not assert "excusable neglect" in support of the Motion.

14

best interests of the Debtors, their Estates and PPOCs. Confirmation Order ¶ U. Moreover, the Court found that the Plan satisfied all of the necessary confirmation requirements of section 1129 of the Bankruptcy Code, including that the treatment of all rejecting classes was "fair and equitable." *See id.* ¶¶ M, 20. The Court also found that the Plan Settlements contained in the Fourth Amended Plan were negotiated in good faith and at arm's length, and approved the Plan Settlements and the Trusts contemplated by the Plan Settlements as essential elements of the Plan that are fair, equitable, and in the best interests of the Debtors, their Estates, their creditors, and all parties in interest, and satisfy section 1123(b)(3)(a) of the Bankruptcy Code and Bankruptcy Rule 9019. *Id.* ¶ 13. Mr. Anderson cannot show grounds for revoking the Confirmation Order under section 1144 of the Bankruptcy Code.

Finally, Mr. Anderson misplaces his reliance on section 105(a) of the Bankruptcy Code as a means for the Court to exercise its "equitable powers" to fashion relief not otherwise available under the Plan or the Bankruptcy Code. *See, e.g.,* First Reply at 4.[21] The Court is aware of the difficulties and challenges facing opioid victims. However, "section 105(a) limits the bankruptcy court's equitable powers, which must and can only be exercised within the confines of the Bankruptcy Code. Section 105 does not authorize the bankruptcy courts to create substantive rights that are otherwise unavailable under applicable law, or constitute a roving commission to do equity." *In re Kalikow*, 602 F.3d 82, 96-97 (2d Cir. 2010) (citations and internal quotation marks omitted). Nor does it "allow the bankruptcy court to override explicit mandates of other sections

---

[21] Mr. Anderson asserts, as follows:

XII. EQUITABLE CONSIDERATIONS

The Court's equitable powers are critical to ensuring a just outcome in this case. The opioid crisis has caused immeasurable harm, and the legal system must be flexible enough to address the unique circumstances of each victim. In this case, the potential intergenerational impact on [his daughter] necessitates the Court's intervention to ensure that her needs are adequately addressed.

15

of the Bankruptcy Code." *Law v. Siegel*, 571 U.S. 415, 421 (2014). "[A] statute's general permission to take actions of a certain type must yield to a specific prohibition found elsewhere." *Id.*

As stated, Bankruptcy Code sections 1127, 1129 and 1144 provide limited opportunities for chapter 11 plans to be modified, revoked, or appealed. *See* 11 U.S.C. §§ 1127, 1129, 1144. Bankruptcy Code section 105(a) may not invade the ambit of those statutes and provide wider remedies than the statute allows.[22]

## CONCLUSION

Based on the foregoing, the Court denies the Motion.

IT IS SO ORDERED.

Dated: March 30, 2025
New York, New York

/s/ *James L. Garrity, Jr*
Hon. James L. Garrity, Jr.
U.S. Bankruptcy Judge

---

[22] The cases cited by Anderson are distinguishable or irrelevant. *Pepper v. Litton* does not provide to the Court the wide equitable powers Anderson contests it has. *See generally, Pepper v. Litton*, 308 U.S. 295 (1939). *In re Tristar* concerned a debtor's claim for equitable subordination, an issue not reached in this case as it was raised in a reply brief. *See generally In re Tristar Esperanza Properties, LLC*, 544 B.R. 859 (Bankr. C.D. Cal. 2016). Even were the Court to move forward with Anderson's equitable subordination claim, *In re Tristar* would not support his claim. *In re Tristar* concerned the equitable subordination claim a creditor "who withdrew as a member of the debtor limited liability company . . . and obtained a judgment valuing her equity interest after the LLC did not honor a provision in its operating agreement requiring buy-back of the withdrawing member's interest." *In re Tristar Esperanza Properties, LLC*, 488 B.R. at 396. Such case is not analogous to the matter before the Court. *In re Bernard L. Madoff Inv. Sec. LLC*, 458 B.R. 87 (Bankr. S.D.N.Y. 2011), concerned a fraudulent transfer claim pursued by the trustee. *See generally, In re Bernard L. Madoff Investment Securities LLC*, 458 B.R. 43 (Bankr. S.D.N.Y. 2011). As stated, in this case, while the trustee or another party to which the trustee has sold or assigned litigation rights to may pursue fraudulent transfer claims, Anderson may not.

16