**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

NOT FOR PUBLICATION

------------------------------------------------------- x

In re:                                              :        Case No. 22-22608 (JLG)

                                                    :        Chapter 11

Branded Operations Holdings, Inc., *et al*.,        :

                                                    :

Debtors.[1]                                         :        (Jointly Administered)

------------------------------------------------------- x

## MEMORANDUM DECISION AND ORDER
## DENYING MOTION FOR RECONSIDERATION

<u>**APPEARANCES**</u>:

Seward & Kissel LLP
*Counsel to the Plan Administrator*
*Patrick J. Bartels*
One Battery Park Plaza
New York, NY 10004
By:    Brian P. Maloney
       Catherine V. LoTempio

Edgar C. Gentle, III
*Trustee of the Endo Opioid Personal Injury Trust*
501 Riverchase Parkway, Ste. 100
Hoover, AL 35244

Charles Elliott Anderson
*Appearing Pro Se*
1205 California Ave. #2
Las Cruces, NM 88001

---

[1] The last four digits of Debtor Branded Operations Holdings Inc.'s tax identification number are 6945. Due to the large number of debtors in these Chapter 11 Cases, a complete list of the debtor entities and the last four digits of their federal tax identification numbers is not provided herein. A complete list of such information may be obtained on the website of the Debtors' claims and noticing agent at https://restructuring.ra.kroll.com/Endo. The location of the Debtors' service address for purposes of these Chapter 11 Cases is: 1400 Atwater Drive, Malvern, PA 19355.

**HON. JAMES L. GARRITY, JR.**
**U.S. BANKRUPTCY JUDGE**

## INTRODUCTION[2]

Charles Elliot Anderson ("Mr. Anderson" or the "Petitioner") is a self-described "surviving victim" and personal injury claimant in these Chapter 11 Cases. He filed a motion seeking an order modifying the Debtors' Fourth Amended Plan and granting him equitable relief (the "Motion to Amend").[3] The Court denied the Motion to Amend (the "Order").[4] The matter before the Court is Mr. Anderson's motion for reconsideration of the Order (the "Motion")[5] pursuant to Rule 9023 of the Federal Rules of Bankruptcy Procedure ("Bankruptcy Rule 9023") which makes Rule 59 of the Federal Rules of Civil Procedure ("Rule 59") applicable to this proceeding. Mr. Anderson also filed an addendum (the "Addendum") to the Motion.[6]

Edgar C. Gentle, III (the "PI Trustee") is the trustee of the Endo Opioid Personal Injury Trust (the "PI Trust") formed under the Plan. He filed a response to the Motion (the "PI Trustee Response").[7] Under the Plan, Patrick J. Bartels (the "Plan Administrator") is the Plan

---

[2] Capitalized terms used but not otherwise defined herein shall have the meaning ascribed to such terms in the confirmed *Fourth Amended Joint Chapter 11 Plan of Reorganization of Endo International plc and its Affiliated Debtors*, Endo ECF No. 3849 (the "Fourth Amended Plan," or the "Plan") or the *Findings of Fact, Conclusions of Law, and Order (i) Confirming the Fourth Amended Joint Chapter 11 Plan of Reorganization of Endo International PLC and its Affiliated Debtors and (II) Approving the Disclosure Statement with Respect Thereto*, Endo ECF No. 3960 (the "Confirmation Order"). References to "Endo ECF No. ___" are to documents filed on the electronic docket of Case No. 22- 22549. References to "ECF No. __" are to documents filed on the electronic docket of Case No. 22-22608.

[3] *Motion: For Modification of the Plan of Reorganization and for Equitable Relief to: 1) Acceptance of Allowed Claim, 2) Designate Surviving Victim Status, 3) Establish Separate, Segregated Protective Trust for all "Surviving Victims" and 4) Directing Full Payment of Allowed Claim in the Amount of $5 Million Dollars $(5,000,000)*, ECF No. 56.

[4] *Memorandum Decision Denying Motion for Entry of an Order Modifying the Plan of Reorganization*, ECF No. 69.

[5] *Motion: for Reconsideration of Order Denying Motion to Modify Plan of Reorganization*, ECF No. 72.

[6] *Addendum to Motion for Reconsideration*, ECF No. 82.

[7] *Personal Injury Trustee's Response to Charles Elliot Anderson Jr.'s Motion for Reconsideration*, ECF No. 112.

Administrator of the remaining debtors of Endo and its Debtor affiliates, (collectively, the "Remaining Debtors") in these Chapter 11 Cases. He filed an objection to the Motion (the "Objection").[8] Mr. Anderson filed a reply to the Objection and the PI Trustee Response (the "Reply").[9] He also filed two supplements to the Reply (the "First Supplement"[10] and the "Second Supplement,"[11] respectively).

The Court conducted a hearing on the Motion. At the hearing, Mr. Anderson appeared pro se, and the Plan Administrator and PI Trustee appeared through their respective counsel. For the reasons set forth herein, the Court denies the Motion.

## <u>JURISDICTION</u>

This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the Amended Standing Order of Referral of Cases to Bankruptcy Judges of the United States District Court for the Southern District of New York (M-431), dated January 31, 2012 (Preska, C.J.). This matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2). In addition, pursuant to the Confirmation Order and Plan, this Court has retained jurisdiction over the Chapter 11 Cases and all matters arising out of, or related to, the Chapter 11 Cases and the Plan, including, among other things, to enter and implement such orders as may be necessary or appropriate to execute, implement, or consummate the provisions of the Plan, the Confirmation Order, and any agreements

---

[8] *Plan Administrator's Objection to Motion for Reconsideration*, ECF No. 113.

[9] *Response Brief - In Opposition to Plan Administrator's Objection and PI Trustee's Response Concerning PI Trust Administration and Victim Distribution (Doc #113 & #112)*, ECF No. 116.

[10] *Petitioner's Supplemental Submission Regarding Recent Financial Results in Support of Pending Motions and Objections*, ECF No. 117.

[11] *Petitioner's Emergency Supplemental Submission Regarding Recently Uncovered Merger Information in Support of Pending Motions and Objections*, ECF No. 119.

and documents in connection with or contemplated by the Plan, the Confirmation Order, the

Purchase and Sale Agreement, and the Disclosure Statement. *See* Plan § 13.1.

## BACKGROUND[12]

**The Order**

    In his Motion to Amend, Mr. Anderson sought an order of the Court:

- Allowing and directing payment of his $5 million claim in full, inclusive of his cure claim.

- Recognizing his surviving victim status by designating and recognizing him as a "surviving victim" as "defined within the meaning of the Plan and applicable law."

- Establishing a separate, segregated protective trust for the benefit of all "surviving victims," ensuring that sufficient funds are available to compensate the "surviving victims" for their ongoing suffering and to provide for their future needs, including the generational effect on "surviving victims'" children, including the payment of cure claims.

- Directing the PI Trust and the PI Trustee to pay his allowed claim in full.

Order at 6-7. Mr. Anderson argued that a reorganization plan would only be fair and equitable,

pursuant to section 1129(a)(3) of the Bankruptcy Code, if it prioritizes the needs of the surviving

victims. *Id.* at 8. He also cited to section 510(c) of the Bankruptcy Code for the proposition that

certain claims can be subordinated to ensure the surviving victims receive adequate compensation,

*id.*, and separately raised arguments concerning the Debtor's alleged fraudulent concealment of

facts from creditors and other inequitable conduct, *id.* at 8-9. As evidence of this purported

concealment, he attached a news article (the "News Article"). *Id.* He further alleged breach of

fiduciary duty by the Debtors' officers and directors, and alleged the Debtors fraudulently

---

[12] A more detailed background of the history of the Debtors' Chapter 11 Cases and the pleadings related to Mr. Anderson's Motion to Amend can be found in the Order at 4-11. The Court assumes familiarity with the Order.

transferred estate assets to third parties with the intent to hinder, delay, or defraud creditors, or, alternatively, transferred them for less than reasonably equivalent value. *Id.* at 10. Mr. Anderson included arguments concerning the negative impact the opioid epidemic has had on him and his daughter. *Id.* at 11.

In denying the Motion to Amend, the Court found that, pursuant to section 1141(a) of the Bankruptcy Code, the Plan is binding on all creditors, including Mr. Anderson, and the Confirmation Order is a final, non-appealable order. *Id.* at 12. The Court also found that Mr. Anderson lacks standing to seek to modify the Plan under section 1127(b) of the Bankruptcy Code, and, in any event, he cannot state grounds for relief under section 1127(b) because it is undisputed that the Plan has been substantially consummated. *Id.* at 14. The Court held that Mr. Anderson cannot revoke the Confirmation Order pursuant to section 1144, as such request for relief is time-barred, and, even if it were not, he cannot show grounds for revoking the Confirmation Order. *Id.* at 14-15. Finally, the Court held that Mr. Anderson's reliance on section 105(a) of the Bankruptcy Code for relief from the Plan is misplaced, as that provision "does [not] . . . 'allow the bankruptcy court to override explicit mandates of other sections of the Bankruptcy Code.'" *Id.* at 15-16 (quoting *Law v. Siegel*, 571 U.S. 415, 421 (2014)).

**The Motion**

Mr. Anderson seeks reconsideration of the Order pursuant to Rule 59 and Bankruptcy Rule 9023. He argues that the Order is "based on a clear error of law and fact in its interpretation and application of equitable principles under the Bankruptcy Code, particularly in the context of the devastating opioid crisis and the unique plight of surviving victims." Motion at 2.[13] Mr. Anderson states that the Motion contains "new evidence," and cites to the News Article that he annexed to

---

[13] Mr. Anderson's motion does not include page numbers; the Court refers to the PDF pagination.

his Motion to Amend. *Id.* He asserts that the information contained in the News Article was not "readily available to surviving victims prior to and during the confirmation of the Plan, thus impacting their ability to meaningfully participate in the bankruptcy process, and potentially undermining the fairness and validity of the Confirmation Order . . . ." *Id.* Mr. Anderson argues that the Motion "invokes the Court's integration and equitable subordination powers." *Id.* He also argues the Court did not fully address the arguments raised in his replies to the objections to the Motion to Amend. *Id.* at 3.

Mr. Anderson asserts that granting the Motion to Amend would "establish a significant precedent in the complex realm of opioid litigation and bankruptcy law," "prevent manifest injustice . . . safeguard the rights of a uniquely vulnerable population," and "establish a legacy of justice." *Id.* at 3-4. He argues that, as a self-described "surviving victim" he has standing to bring the Motion to Amend; he says his "direct stake" in the "fair and equitable distribution of the Debtors' assets" establishes his standing as a "party in interest" under the Bankruptcy Code. *Id.* at 4. Mr. Anderson argues that "the ongoing harm to surviving victims and unresolved issues concerning their just compensation [under the Plan] necessitate[s] the Court's continued equitable oversight" and "precedent allows for plan modification post-consummation to address unforeseen circumstances, fraud, or to prevent manifest injustice." *Id.* As he did in his Motion to Amend, he asserts that he and an unspecified class of claimants should be designated as "surviving victims." *Id.*

Mr. Anderson argues that the binding nature of a confirmed plan pursuant to section 1141(a) of the Bankruptcy Code is "not absolute and does not apply when the integrity of the confirmation process has been undermined by fraud, or when a party was deprived of a full and fair opportunity to litigate their claims." *Id.* at 5. He asserts that the News Article suggests the

Debtors engaged in fraudulent concealment and that such lack of transparency prevented a fully informed decision on the merits of the Plan by claimants. *Id*. He argues that, under such conditions, application of the doctrine of res judicata should not bar the Court from reconsidering the Plan to ensure a just and equitable outcome. *Id*. Mr. Anderson contends the Court has the power of equitable subordination under section 510(c) of the Bankruptcy Code and equitable powers under section 105(a) of the Bankruptcy Code, and that it should exercise these powers to amend the Plan and adjust the treatment of claimant classes "whose recoveries might be less directly tied to the egregious conduct" as described in the News Article. *Id*. Mr. Anderson argues that the News Article is newly discovered evidence which "warrants further inquiry by the Court, including an investigation as to the source and veracity of the information presented in the article." *Id.* at 5-6.

Next, Mr. Anderson argues that the attorneys involved in these bankruptcy proceedings, including the Debtors' attorneys, have collected substantial fees while the surviving victims of the opioid crisis have not received meaningful compensation. *Id.* at 6. He states that "[t]his disparity underscores the urgent need for the Court to exercise its equitable powers to ensure that a fair and just distribution of the Debtors' assets prioritizes the needs of the 'surviving victims.'" *Id.*

Finally, Mr. Anderson argues that this case presents a "rare and extraordinary set of circumstances" insofar as the harms he has suffered due the opioid crisis have been profound and generational. *Id*.

Mr. Anderson requests this Court vacate its Order, conduct a further hearing on the Motion to Amend, and grant the relief requested in that motion. *Id.* at 7.

### The Addendum

Mr. Anderson explains that the Addendum purports to

> [d]etail Endo's history of misconduct and lack of transparency, the strategic
> financial maneuvers employed before and during bankruptcy to minimize
> victim compensation, the resulting grossly inadequate pro rata payment to
> victims, the concerning depletion of estate/trust assets by substantial
> professional fees, personal costs incurred by victims, prior valuations of claims,
> new financial information, and other significant prior fines and settlements . . .
> .

Addendum at 1. He argues that his "initial pro rata payment [under the Plan] of a mere $390" is

"shockingly inadequate" to personal injury opioid claimants, including himself. *Id.* at 2. He argues

this amount is "demonstrably insufficient to provide any meaningful compensation" for "over

33,000 Allowed PI Opioid Claimants." *Id*. He says that this payment "stands in stark contrast to

the fundamental principles of fairness and equity that should govern bankruptcy proceedings"

pursuant to section 105(a) of the Bankruptcy Code. *Id.*

Mr. Anderson next argues that his unique and compelling claim warrants specific

consideration and underscores the devastating impact of the opioid crisis due to the debilitating

addiction, consequential harm, and injuries related to opioid addiction that he has experienced. *Id.*

at 2-3. He reiterates the "ongoing generational impact" on his daughter and argues the estimated

pro rata distribution "utterly fails to recognize the severity and uniqueness" of his suffering. *Id.* at

3.

Mr. Anderson restates that the Debtors "engaged in a calculated and intentional scheme to

shield assets and minimize payouts to opioid victims, both before and during the bankruptcy

proceedings." *Id.* He argues that the Debtors' actions "demonstrate a deliberate intent to extract

significant value for insiders and prioritize insider financial gain over impending obligations to

those harmed by the opioid crisis." *Id.* He states that the Debtors purposely minimized payments

to federal agencies and argues that "the bankruptcy process allowed Endo to shed billions in

obligations to the government, further diminishing the overall pool of funds available to address

8

the societal costs of its conduct and indirectly reducing the funds available for victim compensation or abatement efforts." *Id.* at 3-4. He maintains that the Debtors used the bankruptcy process to "transfer its valuable assets to a new shell, largely controlled by its former debt holders, or insiders while leaving behind a fraction of the necessary funds to compensate victims," and cites to the News Article as support for those contentions. *Id.* at 4.

Mr. Anderson asks the Court to "scrutinize the fairness of the outcome [under the Plan]" and "fashion a remedy that upholds the fundamental equitable principles of bankruptcy administration." *Id.* at 4-5 (citing *Pepper v. Litton*, 308 U.S. 295 (1939)). He argues that the relief he is seeking is rooted in the Court's inherent equitable powers under section 105(a) of the Bankruptcy Code and that those powers allow it to bypass the statutory limitations of sections 1127(b) and 1144 of the Bankruptcy Code. *Id.* at 5. He explains that he seeks "equitable intervention within the framework of the confirmed Plan" and the relief he seeks concerns the "implementation and equitable effect" of the Plan. *Id.* He asserts that "Debtor's inequitable conduct compromised the integrity of the process that led to the Plan, and [section] 105(a) can be invoked to mitigate or cure the unjust consequences of that compromised process for the most vulnerable parties." *Id.*

Mr. Anderson further contests the Court's determination in the Order that he raised arguments concerning fraud, breach of fiduciary duty, and equitable subordination only in his reply papers, and that such claims are derivative and therefore cannot be brought by an individual claimant. *Id.* at 6. He argues that he presented these arguments and supporting evidence at the earliest reasonable opportunity in the context of seeking reconsideration. *Id.* He submits that, while legal procedure is important, strict adherence to such procedure should not prevent the Court from considering evidence of fraud and manifest injustice when exercising its equitable powers and

9

overseeing a Court-established trust. *Id.* Further, he argues that he is not pursuing derivative claims, like one to avoid a fraudulent transfer, that belong to the estate; he is asking the Court, in equity, to address the consequence of the Debtors' alleged misconduct as it impacts the fairness of the pro rata distribution to opioid victims under the confirmed Plan. *Id.*

Mr. Anderson next acknowledges that "surviving victim" is not a defined term in the Plan, but rather is "based on . . . the undeniable reality of the unique vulnerability and severe, ongoing harm suffered by individuals who survived opioid addiction and related permanent injury incidents caused by the Debtor's products - contrasting their situation - with 'wrongful death claims.'" *Id.* He seeks "equitable recognition of this group based on their shared circumstances and the disproportionate impact the crisis continues to have on their lives and families . . . ." *Id.* at 6. He states that the core principles illustrated in *Pepper* are relevant and applicable to this case. *Id.* He argues that the totality of the evidence presented in the Addendum "directly contradicts the premise that the confirmed Plan resulted in a truly 'fair and equitable' outcome for all creditors, particularly the 'surviving victims,' due to the fraud and asset shielding by the Debtor." *Id.*

Next, Mr. Anderson raises arguments in opposition to arguments he predicts the Plan Administrator and PI Trustee will raise in their papers. *Id.* at 7. First, in anticipation of arguments concerning the finality of the Plan, he contends that the estimated pro rata distribution is a "manifest injustice that was not fully apparent or appreciated at the time" the Plan was confirmed. *Id.* He argues that the "discovery" of this pro rata distribution "crystallizes the inadequacy of the Plan's provisions for victims in a way that was not concrete during the confirmation process, providing a basis for reconsideration despite confirmation." *Id.* He argues that the pro rata distribution is "neither truly feasible in terms of providing meaningful compensation nor sufficient in meeting the ends of justice." *Id.*

Second, he argues that, although his request for relief lacks a specific legal basis, "the unique vulnerability and severe, ongoing harm suffered by 'surviving victims,' including the extraordinary circumstances of [Mr. Anderson's] near-fatal injury . . . coupled with the Debtor's documented history of misconduct, asset shielding, and fraudulent conduct . . . provides ample equitable grounds for the Court to exercise its broad powers" pursuant to section 105(a) of the Bankruptcy Code. *Id.* Mr. Anderson also argues that

> any objection suggesting the allegations of fraud or misconduct were addressed during confirmation is countered by the argument that the full scope and implications of these issues, particularly how they directly correlate to the confirmed, grossly inadequate victim payout (Exhibit A), became truly apparent or significantly more emphasized after confirmation. The communications with an [Opioid Claimants' Committee] member (Exhibit C) and investigative journalists (Exhibit D) highlight ongoing concerns and investigations into the Debtor's conduct and the bankruptcy outcome, suggesting that all relevant facts may not have been fully vetted or appreciated during confirmation.

*Id.*

Mr. Anderson next contends that the attorneys involved in the Chapter 11 Cases were unjustly enriched, and the disparity between the pro rata payment he will receive under the Plan and the attorney's fees to be paid "underscores the profound inequity of the bankruptcy outcome." *Id.* at 8. He asserts that these attorney's fees "may be paid directly or indirectly from the victim trust or have depleted the estate to the detriment of the trust's funding." *Id.* Mr. Anderson also seeks renumeration for the fees and costs he incurred in participating in these bankruptcy proceedings, and requests the Court order the PI Trust or estate to refund these fees to him. *Id.*

He argues that the actions of the Debtors can be legally characterized as a "public nuisance." *Id.* at 9. Without citation, he asserts that characterizing the Debtors' conduct as a public nuisance has been "established in opioid litigation across the country." *Id.* at 9. He labels the

Debtors as "corporate predators." *Id.* Mr. Anderson asks the Court to consider this "predatory pattern of corporate conduct when evaluating the fairness and equitability of the [Plan's] effects on victims and when overseeing the distribution of trust funds." *Id.*

Mr. Anderson asserts that there is "new financial information" concerning the Debtors that "indicates that the trust held significant cash and cash equivalents" as of September 30, 2024. *Id.* He argues that this information "warrants further scrutiny by the Court to understand the totality of funds within the various trusts and ensure that resources are being allocated equitably." *Id.* He also asserts that his claims were previously valued at $3.5 million on Kroll's website, and the difference between the $3.5 million and the estimated pro rata payment of $390 "raises serious questions about the claim valuation process, transparency, and the factors that led to such a minimal final estimated payment." *Id.* at 10.

Mr. Anderson argues that the trusts, agents, and official committees have not been forthcoming with information. *Id.* He states that he reached out to the PI Trust on April 15, 2025, seeking information regarding the "methodology and basis for the . . . $390 pro rata payment," but has not received a response from the PI Trust as to how they calculated that amount. *Id.* Mr. Anderson states that he communicated with a member of the Official Committee of Unsecured Creditors who "expressed an apology" concerning the estimated pro rata payment under the Plan and such "communications underscore the perceived inadequacy of the victim payout by individuals involved in the bankruptcy and demonstrate a good faith effort to obtain transparency and uncover further information regarding the decisions and compromises that led to this outcome. They highlight the human cost acknowledged by an insider and reinforce the concerns about the process and its results for victims, showing lack of zealous advocacy for victim interests compared to other stakeholders." *Id.* at 11. Mr. Anderson also states that he communicated with the claims

12

agent and counsel for the GUC Trust and such communications "further highlight the confusion and issues within the claims administration process itself, including the numbering of claims, which contributes to the lack of transparency surrounding the valuation and eventual payout. It also demonstrates Petitioner's proactive efforts to navigate this complex system and ensure his single personal injury claim, documented with multiple numbers by the agent, is properly considered across all relevant trusts." *Id.* He also argues that his communications with the authors of the News Article demonstrate "proactive efforts to bring public attention to the discrepancies" concerning the bankruptcy proceedings. *Id.*

Mr. Anderson cites to cases he says demonstrate the Debtors' "documented history of misconduct and violations predating the bankruptcy." *Id.* (citing *Staubus v. Purdue Pharma, L.P.*, No. C-41916 (Tenn. Cir. Ct.);[14] *U.S. ex rel. Dhillon v. Endo Pharms.*, 27 F. Supp. 3d 615 (E.D. Pa. 2014)[15]). He argues these cases, both decided prior to the Petition Date, "demonstrate[] a systemic pattern of behavior relevant to assessing the Debtor's conduct throughout the bankruptcy process." *Id.* at 12. He maintains that the unique circumstances of the opioid crisis "necessitate the establishment of precedent to ensure this particularly vulnerable class of creditors receives just treatment." *Id*. He contends that the Court has the equitable power, pursuant to section 105(a) of the Bankruptcy Code to recognize "surviving victims" as a "distinct class with unique needs and vulnerabilities." *Id.*

In support of his arguments, Mr. Anderson contends that *U.S. ex rel. Dhillon*, 27 F. Supp. 3d 615, 632, "serves as a direct precedent demonstrating Endo's history of engaging in unlawful

---

[14] Mr. Anderson states this case concerns "a court imposing a default judgment on liability . . . as a sanction for discovery improprieties." Addendum at 12.

[15] Mr. Anderson states this case concerns a "federal guilty plea for misbranding and settlement for false marketing." Addendum at 12.

drug promotion tactics that led to significant legal consequences under the [False Claims Act, 31 U.S.C. § 3729, *et seq.*]." *Id.* at 13. He references "*U.S. v. Endo Health Solutions Inc.*," which he describes "as criminal and civil resolutions announced by the U.S. Department of Justice in February 2024." *Id.* He argues this case "provides compelling evidence of Endo's culpability regarding the marketing of Opana ER, independent of the specific claims in this case. . . . This Court should consider this resolution as definitive proof of Endo's past illegal conduct, which directly contributed to the opioid crisis and caused significant harm." *Id.* Mr. Anderson also references *Staubus,* which he says "provides further evidence of Endo's litigation conduct and a court's strong response to it. The imposition of a default judgment as a sanction for discovery issues suggests a lack of transparency or cooperation in legal proceedings." *Id.* at 14 (citing *Staubus v. Purdue Pharma, L.P.*, No. C-41916 (Tenn.Cir.Ct.)).

Mr. Anderson argues that *U.S. v. Wells Fargo & Company and Wells Fargo Bank, N.A.* (2020),[16] "serves as a powerful example of a large corporation being held accountable for pervasive unethical behavior that harmed consumers on a massive scale. It underscores the judiciary's role in imposing significant penalties to deter corporate fraud and ensure that companies have adequate internal controls." *Id.*

To summarize, Mr. Anderson's asserts, as follows:

- The Court has equitable powers pursuant to section 105(a) of the Bankruptcy Code, as stated in *Pepper*, and should use these powers to modify the Plan in order to prevent injustice.

---

[16] Mr. Anderson does not provide a citation for this case and the Court is unable to locate a case with this name. Mr. Anderson states that this case is cited to in order to "[r]eferenc[] the Deferred Prosecution Agreement and Civil Settlement Agreement announced by the U.S. Department of Justice in February 2020." Addendum at 14.

- The estimated pro rata share to claimants under the Plan is too low to be equitable, and the Court, in recognition of Mr. Anderson's injuries, should order full payment of his $5,000,000 claim.

- The Court should claw back attorney's fees granted to the Debtors' attorneys because those fees are too high.

- The Court should order the Debtors to dedicate a portion of revenue stemming from opioid sales to fund the victim trust by applying the public nuisance legal theory.

- The Court, in recognition of Mr. Anderson's efforts in bringing the Motion, should reimburse him for fees and expenses in an amount the Court deems equitable.

*Id.* at 15-16. He seeks the following relief:

a. Grant this Motion for Reconsideration and vacate the Order.

b. Proceed with the already scheduled hearing on May 22, 2025, giving due consideration to the arguments raised in Petitioner's replies and the additional legal rationale and new evidence presented herein.

c. Designate "surviving victims" as a distinct class of creditors within the meaning of the Plan, recognizing their rare, unique, extraordinary circumstances and ongoing special needs.

d. Grant the relief requested in the Motion to Amend, including the establishment of a separate, segregated protective trust for all "surviving victims" funded at a level that provides meaningful compensation, and directing full payment of Petitioner's allowed claim based on the severe and unique circumstances presented.

e. Consider modifying the name of another class within the Plan to clearly distinguish it from the "surviving victim" class to avoid confusion and ensure appropriate allocation.

f. Order an independent federal compliance audit of the PI Trust's financial management, calculation of the pro rata share, determination of the number of Allowed Claims, and the allocation of administrative and professional fees, particularly examining any fees paid from the PI Trust or the estate that reduced funds available for victims including fees paid to the Opioid Claimants' Committee.

g. Order the PI Trust or the estate to refund Petitioner's documented court-related expenses totaling approximately $320.

15

h.  Grant such other and further relief as the Court deems just and equitable to prevent manifest injustice and ensure accountability including making the debtors responsible for any "liens" that come as a result of their opioid products that further depletes actual recovery from actual "surviving victims" of this crisis.

*Id.* at 15.[17]

## **The PI Trustee Response**

In his response, the PI Trustee states that the PI Trust holds approximately $39 million in distributable proceeds and is bound by the procedures set forth in the PI TDP, as set forth in the Plan. PI Trustee Response ¶¶ 1, 6. The PI Trustee also states that Mr. Anderson will receive four times the pro rata distribution, as he granted certain releases under the Plan. *Id.* ¶ 5.

## **The Objection**

In his objection, the Plan Administrator first notes that "[t]he Fourth Amended Plan was confirmed in accordance with law and is substantially consummated [and] is binding on Mr. Anderson . . . ." Objection ¶ 12. He argues that Mr. Anderson has not established a clear error of law or fact in his Motion. *Id.* ¶ 16. The Plan Administrator asserts that Mr. Anderson has not cited

---

[17] Mr. Anderson submits the following exhibits and descriptions in support of the Addendum. These exhibits are filed separately at ECF No. 83.

Ex. A: Email to Mr. Anderson from the PI Trust received April 8, 2025, stating the estimated pro rata payment is $390.

Ex. B: Email from Mr. Anderson to the PI Trust and the PI Trustee, dated April 15, 2025, inquiring about the formula for the $390 pro rata payment.

Ex. C: Email communications between Mr. Anderson and Aerik Preis.

Ex. D: Email communications between Mr. Anderson and journalists at ProPublica and the Philadelphia Inquirer.

Ex. E: Email communications between Mr. Anderson and Stretto/GUC Trust representatives.

Ex. F: Third Quarter 2024 Report for the Endo GUC Trust.

Ex. G: Receipts for Mr. Anderson's court-related expenses (postage, copies, ink, paper).

Ex. H: Screenshots from Kroll's website showing prior $3.5 million valuation for Claim Nos. 8620 and 10223, and evidence of original $5 million claim.

Ex. I: Mr. Anderson's medical records from University Medical Center.

any new case law, and the Court already addressed and dismissed each of the cases Mr. Anderson

cited in his Motion to Amend.[18] *Id.* He argues that Mr. Anderson's dissatisfaction with his expected

pro rata distribution under the Plan cannot be considered in a motion for reconsideration because

a motion pursuant to Rule 59(e) "is inappropriate where it seeks to relitigate old issues or raise

new arguments that could have been made earlier." *Id.* ¶ 15, n.11 (citing *Adelphia Communs. Corp.*

*v. U.S. Specialty Ins. Co. (In re Adelphia Communs. Corp.)*, 639 B.R. 657, 661(Bankr. S.D.N.Y.

2022)).

He also argues that Mr. Anderson's reliance on section 105(a) of the Bankruptcy Code is

misplaced, because, as noted in the Order, "the Bankruptcy Code does not allow bankruptcy courts

to create substantive rights that are otherwise unavailable under applicable law." *Id.* ¶ 16 (citing

*New England Dairies, Inc. v. Dairy Mart Convenience Stores, Inc. (In re Dairy Mart Convenience*

*Stores, Inc.)*, 351 F.3d 86, 92 (2d Cir. 2003)). The Plan Administrator asserts the Court did not err

in rejecting Mr. Anderson's arguments that it has the equitable authority to unwind or amend the

Plan. *Id.*

The Plan Administrator next argues that Mr. Anderson has not put forth new evidence in

support of the Motion. *Id.* ¶ 17. He contends that while the News Article was published post-

confirmation, it is not new evidence as it "[was not] made available since filing of the Motion to

[Amend] or entry of the . . . Order." *Id.* (citing *In re Richardson Foods, Inc.,* 667 B.R. 500, 513-

14 (Bankr. S.D.N.Y. 2025)). He cites to the Order wherein the Court considered and rejected Mr.

Anderson's arguments concerning the News Article and determined that Mr. Anderson had not

shown grounds for revoking the Confirmation Order under section 1144 of the Bankruptcy Code.

---

[18] The Plan Administrator further argues that, to the extent Mr. Anderson sets forth additional case law in his Addendum, such cases are not new decisions and could have been included in the Motion. Objection ¶ 16, n.12 (*In re New York Racing Ass'n Inc.*, No. 06-12618, 2016 WL 6081087, at *9 (Bankr. S.D.N.Y. Oct. 17, 2016)).

*Id.* (citing Order at 9-10, 14-15). He contends that even were the News Article newly discovered evidence, such evidence is immaterial and would not alter the Court's decision as laid out in the Order.[19] *Id.* ¶ 18.

## **The Reply**

In his Reply, Mr. Anderson asserts that evidence concerning the Debtors' prior misconduct, the lack of transparency in the administration of the PI Trust, the discrepancy between his claim valuation and his estimated distribution, and the "disproportionate professional fees paid" necessitates the Court's "equitable intervention" in this matter. Reply at 2. He argues that the Plan Administrator and PI Trustee's objections are "predicated upon a rigid invocation of procedural bars and an attempt to dismiss substantial, compelling post-confirmation evidence as immaterial," and the PI Trustee Response "conspicuously fails to provide fundamental accountability or justification for the opaque distribution methodology applied to victim funds." *Id.* Mr. Anderson contends that the Objection and PI Trustee Response "demonstrate[] that the extraordinary and troubling circumstances presented by the documented evidence compel this Court to exercise its inherent equitable power." *Id.*

Mr. Anderson recounts the injuries he purports he sustained as a consequence of opioid addiction and the Debtors' actions; he argues that the estimated pro rata distribution is "shocking and appears utterly disconnected from the severity of Petitioner's documented injuries and the immense scale of human suffering and harm caused by the Debtors' actions." *Id.* at 3. He says that the professional fees received by the Debtors' professionals are too high, and that, "[w]hile the Plan Administrator contends this information is not 'new,' its true significance becomes

---

[19] The Plan Administrator also submits that, even were the News Article relevant, it would constitute inadmissible hearsay pursuant to Federal Rule of Evidence 802.

undeniably apparent and material only when juxtaposed with the actual, minimal victim recovery and the subsequent, persistent lack of transparency from the [PI] Trust tasked with distributing funds to those harmed." *Id*.

He argues that the Plan Administrator's arguments regarding plan finality, limitations on plan modification, and the statute of limitations "cannot justly or equitably be applied to shield the administration of a victim trust from scrutiny when faced with compelling, documented evidence of opaque processes, clear miscalculation, and an outcome that is so profoundly inequitable as to constitute a manifest injustice." *Id.* at 4. He again asserts that the Court has "inherent and essential power" in equity to amend or modify the Plan. *Id.* (citing *Pepper*, 308 U.S. at 308). Mr. Anderson contends that his Motion to Amend "addresses critical issues related to the implementation and administration of the confirmed Plan's distribution mechanism and the Trust established thereunder," and that he should not be time barred from seeking modification because "the critical evidence of the unjust outcome . . . and the lack of [PI] Trust transparency only became available post-confirmation . . . ." *Id*.

Mr. Anderson reasserts that the News Article is newly discovered evidence, arguing "this information became undeniably newly compelling and apparent only when viewed in conjunction with the actual, concrete, post-confirmation outcome: the de minimis $390 payout . . . and the related financial documents revealing substantial administrative costs and value residing in related trusts . . . ." *Id.* at 5. He says the "materiality" of the News Article "ripened" when he learned of the distribution amount. *Id.* at 6. Similarly, he argues the GUC Trust financials became material and compelling due to the amount of the expected distribution. *Id*. He points to the "mathematical inconsistency of the payout amount relative to the stated fund size and the lack of any verifiable calculation from the Trustee" as evidence of a clear error of fact in the Order. *Id.* He argues that

the PI Trustee Response omits any justification or calculation explaining why the distribution is so low, especially in contrast with the Debtors' professionals' fees. *Id.* at 6-7. He says this failure is "a significant failure of fiduciary transparency and basic accounting" and raises "questions about the integrity of the distribution process." *Id.*

Mr. Anderson argues that due to his injuries and his claimant status, he has standing to seek "accountability and transparency" from the PI Trustee regarding the management and distribution of trust assets intended for his compensation." *Id.* at 8. He contends that "[a]rguments that standing is limited to specific plan modification contexts ignore the Court's inherent supervisory power over its trusts and the beneficiaries' right to ensure proper administration, particularly when the integrity of the distribution is called into question by compelling evidence of mismanagement and miscalculation impacting their direct recovery." *Id.* He states that "[i]t is a well-established principle that fiduciaries, including bankruptcy trustees, plan administrators, and trust administrators operating under the Court's jurisdiction, owe a high duty of care, loyalty, and, critically, transparency to the beneficiaries they serve." *Id.* at 9. He argues, without citations, that "[c]ourts have consistently held that a failure to provide such transparency, particularly when questioned by beneficiaries regarding the calculation and distribution of funds, can constitute a breach of fiduciary duty and is grounds for court intervention and stringent scrutiny." *Id.*

Mr. Anderson raises claims for equitable subordination pursuant to section 510(c) of the Bankruptcy Code. *Id.* He asserts that the underlying equitable principle of section 510(c), that the Court may use its equitable power to remedy harm caused by improper conduct, is relevant to the present matter. *Id.*

He seeks the following relief:

20

- Court-Determined Equitable Compensation Based on Injury and Demonstrated Failure of Trust Administration: Mr. Anderson seeks to have the Court "determine a specific monetary compensation amount for Petitioner's Allowed PI Opioid Claim that is truly commensurate with the severity, permanence, and lifelong impact of the documented injuries."

- Equitable Subordination, Full Disclosure, and Independent Recalculation: Mr. Anderson requests the Court consider equitable subordination of certain claims or interests, and further requests that "a court-ordered, independent, and fully transparent disclosure of the precise total amount of funds available for distribution to PI Opioid Claimants, the exact total number of Allowed Claims used in the calculation, and the specific formula applied."

- Payment of Consequential Costs and Burdens Incurred by the Victim by the Responsible Entity: Mr. Anderson requests that the Court order the Debtors to reimburse Mr. Anderson for his medical expenses and costs related to his injuries as well as reasonable compensation for his time navigating the Chapter 11 Cases.

- Establishment of Permanent, Ongoing Funding for Surviving Victims from Corporate Profits or Equity - Holding the Public Nuisance Accountable: Mr. Anderson requests the Court "order that a[]specific percentage of the reorganized entity's ongoing opioid sales revenue or a meaningful grant of shares or equity in the reorganized entity be dedicated to providing permanent, sustainable funding for Petitioner and other surviving victims with Allowed PI Opioid Claims."

*Id.* at 10-11.

### The First Supplement

The First Supplement addresses the "Q1 2025 report"[20] of Endo, Inc. ("New Endo"). Mr. Anderson argues that the financial report demonstrates that New Endo is a "substantial, profitable company with significant financial resources." First Supplement at 2. To summarize, Mr. Anderson asserts that the results:

- Directly counter arguments by the Plan Administrator and PI Trustee suggesting that the Plan provided the maximum recovery feasible for victims.

---

[20] The financial report is annexed as Exhibit A to the Supplement.

- Highlight the ongoing profitability and benefit from the opioid market.

- Underscore the profound inequity and need for investigation.

- Reinforce arguments for judicial intervention.

*Id.* at 3.

**The Second Supplement**

In the Second Supplement, Mr. Anderson states that he "recently uncovered" information concerning a "proposed merger between [New Endo] and Mallinckrodt plc." Second Supplement at 2. He attaches four exhibits to the Second Supplement:

> Exhibit A: A message from Siggi Olafsson, CEO of Mallinckrodt announcing significant progress in the planned merger with New Endo.
>
> Exhibit B: A press release from Mallinckrodt and New Endo announcing the proposed merger.
>
> Exhibit C: Mallinckrodt's 2025 Annual Shareholders Report/Proxy Statement for the fiscal year ended December 27, 2024.
>
> Exhibit D: A document from Mallinckrodt plc outlining the process for transferring shares.

*Id.* at 3-4. Mr. Anderson contends that this evidence highlights the inequity of the estimated pro rata distribution under the Plan and demonstrates that New Endo has "substantial financial value" that "far exceeds the compensation offered." *Id.* at 4. He also asserts that the proposed merger provides further evidence of a pattern of strategic maneuvers and asset shielding. *Id.* Mr. Anderson argues New Endo should allocate a percentage of ongoing opioid sales revenue or equity in New Endo to victims of the opioid crisis. *Id.* at 5. He contends the merger information is essential for the Court to consider and, due to the profound inequity in the Chapter 11 Cases, provide the relief he requested in his Motion to Amend. *Id*. He again cites to *Pepper* as support for his argument that the Court can use its equitable powers to "prevent injustice." *Id*.

Mr. Anderson requests that the Court:

- Order an immediate investigation into the financials of the PI Trust, including ordering the production of the "numbers in the trust" and the number of allowed claimants.

- Recognize Mr. Anderson's rights as an allowed claimant "with a prima facie case to be recognized as a victim in the opioid crisis and receive a just and fair equitable amount to be determined by the Court."

- Order the subordination of Mr. Anderson's claim to the extent necessary to determine an equitable recovery amount.

- Order New Endo and/or the entity created by the proposed merger to pay all "liens associated" with Mr. Anderson's opioid related injuries, documented court costs, and equitable compensation for hours spent navigating the bankruptcy process.

- Order a portion of New Endo or its successor's ongoing "opioid sales revenue or equity contribute to a trust or mechanism for permanent funding for surviving victims."

- Order an independent federal compliance audit of the PI Trust's financial managements and claims processing.

- Granting such other and further relief as the Court deems just and equitable.

*Id.* at 6-7.

## **LEGAL STANDARD**

The Court recognizes that Mr. Anderson is proceeding pro se and, as such, the Court must construe his pleadings liberally and interpret them to raise the strongest arguments they suggest. *See Rosa v. Doe*, 86 F.4th 1001, 1008 (2d Cir. 2023); *see also Chinniah v. FERC*, 62 F.4th 700, 702 (2d Cir. 2023) ("As a pro se plaintiff, [claimant] is entitled to liberal construction of his pleadings and briefs."). Nonetheless, "[a] pro se complaint, like any other, must present a claim upon which relief can be granted." *Corley v. Jahr*, No. 11 CIV. 9044, 2014 WL 772253, at *3 (S.D.N.Y. Feb. 10, 2014) (citing *Crisafi v. Holland*, 655 F.2d 1305, 1308 (D.C.Cir.1981)).

The Motion seeks relief pursuant to Bankruptcy Rule 9023, which makes Rule 59(e) applicable to adversary proceedings under the Bankruptcy Code. *See* Fed. R. Bankr. P. 9023. Rule 59(e) authorizes the filing of a "motion to alter or amend a judgment." Fed. R. Civ. P. 59(e). While Rule 59(e) does not provide specific grounds for amending or reconsidering a judgment, it is settled that "[t]he major grounds justifying reconsideration are 'an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice.'" *Meghji v. Casla Realty LLC (In re Celsius Network LLC)*, No. 24-04002, 2024 WL 4521045 at * 2 (Bankr. S.D.N.Y. Oct. 17, 2024) (quoting *In re Flatbush Square Inc.*, 508 B.R. 563, 569 (Bankr. E.D.N.Y. 2014)).

Reconsideration is "an extraordinary remedy to be employed sparingly in the interests of finality and conservation of scarce judicial resources." *In re Health Management Sys. Inc. Sec. Litig.*, 113 F. Supp. 2d 613, 614 (S.D.N.Y. 2000) (quoting *Wendy's Int'l, Inc. v. Nu-Cape Construction, Inc.*, 169 F.R.D. 680, 685 (M.D. Fla. 1996)). The standard for granting a Rule 59 motion for reconsideration "is strict, and reconsideration will generally be denied unless the moving party can point to controlling decisions or data that the court overlooked." *Analytical Surveys, Inc. v. Tonga Partners, L.P.*, 684 F.3d 36, 52 (2d Cir. 2012) (quoting *Shrader v. CSX Transp., Inc.*, 70 F.3d 255, 257 (2d Cir. 1995)). The burden is on the movant to "show that the court overlooked controlling decisions or factual matters that might materially have influenced its earlier decision." *In re Asia Global Crossing, Ltd.,* 332 B.R. 520, 524 (Bankr. S.D.N.Y. 2005) (internal quotation marks omitted); *see also Zemon v. Papadopoulos (In re Papadopoulos),* No. 12-01907, 2015 WL 1216541, at *8 (Bankr. S.D.N.Y. Mar. 13, 2015) ("[A] court can revisit a prior decision based upon an intervening change in the controlling law, the availability of new evidence, to correct manifest errors of law or fact upon which the judgment is based, or to prevent

manifest injustice." (citation omitted)). A Rule 59 motion should be granted only where matters the Court overlooked "might reasonably be expected to alter the conclusion reached by the court." *Shrader*, 70 F.3d at 257.

A motion for reconsideration "is not a vehicle for relitigating old issues, presenting the case under new theories, securing a rehearing on the merits, or otherwise taking a 'second bite at the apple.'" *Analytical Surveys, Inc.*, 684 F.3d at 52 (quoting *Sequa Corp. v. GBJ Corp.*, 156 F.3d 136, 144 (2d Cir. 1998)). Nor is it "an opportunity for a party to 'plug[] the gaps of a lost motion with additional matters.'" *Cruz v. Barnhart*, No. 04 Civ 9794, 2006 WL 547681, at *1 (S.D.N.Y. Mar. 7, 2006) (quoting *Carolco Pictures Inc. v. Sirota*, 700 F. Supp. 169, 170 (S.D.N.Y. 1988)). "Arguments raised for the first time on a motion for reconsideration are therefore untimely." *Cruz*, 2006 WL 547681, at *1 (citing *Nat'l Union Fire Ins. Co. of Pittsburgh, Pa. v. Stroh Cos., Inc.*, 265 F.3d 97, 115-16 (2d Cir. 2001)). Additionally, "[a] party cannot use a Rule 59(e) motion to cure its own procedural failures or to introduce new evidence or advance arguments that could and should have been presented originally to the court." *In re CPJFK, LLC*, 496 B.R. 65, 67 (Bankr. E.D.N.Y. 2011) (quoting *Scheidelman v. Henderson (In re Henderson)*, Adv. P. No. 09-80035, 2010 WL 4366021, at *5 (Bankr. N.D.N.Y. Oct. 28, 2010)); *accord In re Richardson Foods, Inc.*, 667 B.R. 500, 513-14 (Bankr. S.D.N.Y. 2025).

## ANALYSIS

Local Bankruptcy Rule 9023-1(a) provides, in part, that a motion made pursuant to Rule 59 shall "set forth concisely the matters or controlling decisions which counsel believes the Court has not considered." Local Bankruptcy Rule 9023-1(a). Mr. Anderson does not point to any controlling law, new evidence, or clear error in the Order in support of the Motion. For that reason, the Motion shall be denied.

Mr. Anderson does not cite to any case law in his Motion other than setting forth the standard for reconsideration pursuant to Rule 59. Motion at 3 (citing *In re Motors Liquidation Co.,* 466 B.R. 596, 610 (Bankr. S.D.N.Y. 2013)). He makes the same arguments in support of the Motion that he made in his Motion to Amend.

In broad strokes, he argues that the Court should grant the Motion, because (i) it would be equitable to provide the relief he is seeking, (ii) he has standing to obtain the relief as a "surviving victim" and party in interest, (iii) modification of the Order is warranted to address "unforeseen circumstances, fraud, or to prevent manifest injustice," (iv) the attorneys involved in this case have been unjustly enriched, (v) the PI Trustee and the Plan Administrator have breached their fiduciary duties, (vi) certain claims and interests should be equitably subordinated in order to provide claimants greater distributions, and (vii) Petitioner presents a "rare and extraordinary set of circumstances." *See* Motion at 4-6; Addendum at 2-3, 7-8; Reply at 8-9. He raised these arguments in his Motion to Amend and the Court fully considered them in the Order. Mr. Anderson argued that equitable relief is appropriate due to the impact the opioid crisis has had on his life and the life of his daughter. Order at 10. He also argued that he should be designated as a "surviving victim." *Id.* at 7. Mr. Anderson asserted that the Debtors engaged in fraudulent concealment and inequitable conduct, and that the attorney's fees and executive compensation paid by the Debtors was excessive. *Id.* at 9-10. Mr. Anderson does not cite to any controlling law or newly discovered evidence the Court overlooked and cannot demonstrate that the Order contained any clear error.

In the Motion, Mr. Anderson restates his prior arguments and seeks to relitigate old issues and take a "second bite at the apple." *See Analytical Surveys, Inc.*, 684 F.3d at 52. He also raises the following arguments for the first time: (i) that the pro rata share of the PI Trust distributions is too low, (ii) that the Debtors' should dedicate a portion of revenue stemming from opioid sales to

fund the PI Trust, and (iii) that the Court should reimburse Mr. Anderson's medical bills and expenses in litigating this Motion and the Motion to Amend. Since Mr. Anderson did not make these arguments in support of the Motion to Amend, he cannot raise them for the first time on reconsideration. These arguments are untimely. *Cruz*, 2006 WL 547681, at *1. A Rule 59 motion may not be used for "plugging the gaps" by raising new arguments, or taking a second bite at the apple on arguments already raised. *Analytical Surveys, Inc.*, 684 F.3d at 52; *accord In re Adelphia Communs. Corp.*, 639 B.R. at 661.

Nor may it be used to advance new requests for relief. *Advanced Analytics, Inc. v. Citigroup Glob. Markets, Inc.*, 301 F.R.D. 31, 46 (S.D.N.Y.) ("Because plaintiff is now making a new argument and seeking new relief that it could have . . . sought in response to defendants' motion . . . its application is not properly brought as a motion for reconsideration . . . ."); *accord Azkour v. Haouzi*, No. 11 Civ. 5780, 2014 WL 6481969, at *1 (S.D.N.Y. Nov. 19, 2014) ("To the extent that the defendants purport to make a new argument or seek new relief, their application is not properly brought as a motion for reconsideration."). Mr. Anderson seeks the following relief for the first time in the Motion, as supplemented by the Addendum and Supplements: (i) increase the distribution payable to him under the Plan, (ii) order an investigation of the finances of the PI Trust, (iii) order the Debtors or New Endo to pay his medical bills and the costs of litigating the motions he has filed in these Chapter 11 Cases, and (iv) establish permanent funding for victims of the opioid crisis by ordering the Debtors or New Endo to fund or provide equity in New Endo to "surviving victims" such as Mr. Anderson. The foregoing relief was requested for the first time in connection with the Motion. The request for this relief is therefore not properly before the Court.

Mr. Anderson's arguments concerning his standing with respect to the relief he is seeking under the Plan are not well taken. He says that as a "surviving victim" he has standing to bring the

Motion to Amend, and his "direct stake" in the "fair and equitable distribution of the Debtors' assets" establishes his standing as a "party in interest" under the Bankruptcy Code. Motion at 4; *accord* Reply at 8. However, the Court did not find that Mr. Anderson was not a party in interest in these Chapter 11 Cases, but rather that he lacks standing to modify the Plan under section 1127(b) of the Bankruptcy Code. Order at 13 (citing *In re Boylan Int'l, Ltd.*, 452 B.R. 43, 48 (Bankr. S.D.N.Y. 2011); *In re Calpine Corp.*, No. 05-60200, 2008 WL 207841, at *6 (Bankr. S.D.N.Y. Jan. 24, 2008)). Furthermore, the Court determined that even if Mr. Anderson had standing to modify the Plan, he cannot "state grounds for relief under section 1127(b) because it is undisputed that the Fourth Amended Plan has been substantially consummated." Order at 14; *see In re Celsius Network LLC,* 656 B.R. 327, 337 (Bankr. S.D.N.Y. 2023) (modification only permitted if it occurs before "substantial consummation" of the plan). Therefore, even were the Court to determine that Mr. Anderson had standing to be heard under section 1127(b), it would not have affected the ultimate determination in the Order.

Finally, Mr. Anderson misplaces his reliance on "newly discovered evidence" as support for the Motion. He erroneously argues that the News Article and the matters discussed therein, constitute "newly discovered evidence," which, if reviewed by the Court, will alter the Court's legal and factual determinations in the order. Motion at 5-6; *see* Addendum at 5, 16; Reply at 5-6.

"The party moving for reconsideration based on the newly discovered evidence must show that (1) the proffered evidence was unavailable despite the exercise of due diligence by the movant in procuring evidentiary support . . . ." *In re Rezulin Prods. Liab. Litig.*, 224 F.R.D. 346, 350 (S.D.N.Y. 2004). "A Rule 59(e) motion can only be granted if the movant presents newly discovered evidence that was not available at the time of the trial . . . ." *Mason v. Hann*, No. 01 Civ. 523, 2011 WL 744798, at *1 (S.D.N.Y. Feb. 28, 2011). "Evidence that was clearly available

at the time of the judgment is not newly discovered for the purposes of a motion under Rule [59(e)]."[21] *Pryor v. Berryhill,* 286 F. Supp. 3d 471, 474 (E.D.N.Y. 2017) (quoting *Whitaker v. N.Y. Univ.*, 543 Fed. App'x 113, 114 (2d Cir. 2013)); *see also LaSalle Bank Nat'l Ass'n v. Capco Am. Securitization Corp.*, No. 02-9916, 2006 WL 177169, at *2 (S.D.N.Y. Jan. 25, 2006); *Johnson v. Askin Cap. Mgmt. L.P.,* 202 F.R.D. 112, 114 (S.D.N.Y. 2001) ("Evidence is not 'newly discovered' if it was in the moving party's possession prior to the entry of judgment." (citation omitted)). Likewise, evidence that did not exist at the time of the determination sought to be altered or amended is not "newly discovered evidence" for the purposes of Rule 59(e). *Loftus v. Fin. Indus. Regul. Auth., Inc.*, No. 20-CV-7290, 2022 WL 2829476, at *2 (S.D.N.Y. July 20, 2022) (holding that evidence that did not exist at the time of trial or other dispositive proceeding cannot be considered "newly discovered").

Mr. Anderson argues the News Article constitutes "newly discovered evidence regarding the extent to which information about the Debtors' alleged fraudulent conduct was concealed from 'surviving victims,' potentially preventing a fully informed decision during the confirmation process." Motion at 3. However, the News Article is not "newly discovered," as Mr. Anderson filed it in support of the Motion to Amend. The Court has already considered the evidentiary value of the News Article and found it did not support Mr. Anderson's claims for relief.

None of the exhibits annexed to the Addendum constitute "newly discovered evidence." Each of the four emails annexed to the Addendum[22] is dated after entry of the Order. That evidence

---

[21] In *Pryor,* the Court was considering the purported newly discovered evidence under Rule 60(b)(2) of the Federal Rules of Civil Procedure. "Whether relief is sought under Rule 59(e) or Rule 60(b)(2), courts apply the same strict standard for determining what qualifies as 'newly discovered evidence.'" *In re Sanofi Sec. Litig.*, No. 14-CV-9624, 2016 WL 3566233, at *1 (S.D.N.Y. June 24, 2016) (citing *Becnel v. Deutsche Bank AG*, 838 F. Supp. 2d 168, 171 (S.D.N.Y. 2011)).

[22] These emails are:

is not "newly discovered evidence" because it did not exist when the Court entered the Order. *See*

*Loftus*, 2022 WL 2829476, at *2. The same is true for the Q1 2025 Report of New Endo.[23]

Exhibit E to the Addendum is an email Mr. Anderson received from an individual he

identifies as a claims agent, who informed him that he had two claims on file with Kroll, and he

should list both of those numbers on his submission form. Addendum Ex. E. Mr. Anderson argues

that this evidence "highlights the confusion and issues within the claims administration process

itself." *Id.* at 11; *Id.* Ex. E. Mr. Anderson does not allege that he did not have this email in his

possession when he filed the Motion to Amend. As such, this email cannot not be considered newly

discovered evidence. Even were the Court to consider the email as newly discovered evidence, it

would have had no impact on the Order because the complexity of the Chapter 11 Cases was not

material to the Order.

Exhibit F to the Addendum is a document Mr. Anderson says is the Endo GUC Trust's

third quarter 2024 report. *Id.* Ex. F. He argues that this financial report demonstrates that the GUC

Trust "value within the post-bankruptcy structure is being directed in ways that severely limit

recovery for victims." *Id.* at 18. He asserts that the Court should use its equitable powers to prevent

an unjust outcome and scrutinize the trust administration. The financial report is dated November

13, 2024. *Id.* Ex. F. Mr. Anderson does not state that this information was "unavailable despite the

---

Exhibit A: An email dated April 18, 2025, sent by the PI Trust stating the estimated pro rata distribution to be sent to Mr. Anderson is $1,560.

Exhibit B: An email dated April 15, 2025, sent by Mr. Anderson to the PI Trust in response to Exhibit A and requesting certain information from the PI Trust.

Exhibit C: An email dated April 24, 2025, sent by Mr. Anderson to Arik Preis, a purported representative of the Official Committee of Unsecured Creditors.

Exhibit D: An email dated April 19, 2025, sent by Mr. Anderson to the purported authors of the News Article requesting they submit statements directly to the Court.

[23] The Q1 2025 Report of New Endo is dated May 7, 2025. Reply, Ex. A.

exercise of due diligence" prior to his filing the Motion to Amend, as is required of a movant attempting to demonstrate that evidence is newly discovered. *In re Rezulin Prods. Liab. Litig.*, 224 F.R.D. at 350. Nor did Mr. Anderson raise arguments concerning the GUC Trust limiting recovery for victims in the Motion to Amend. He may not raise them here, for the first time, on reconsideration. Even were the Court to consider the financial information enclosed in Exhibit F of the Addendum, it would not alter the Court's determination in the Order because the Court does not have the equitable powers to alter the GUC Trust operating procedures.

Exhibit G of the Addendum contains receipts and other documentation evidencing Mr. Anderson's purported costs in navigating the bankruptcy process. Addendum at 17; *Id.* Ex. G. Mr. Anderson does not explain how these documents would constitute newly discovered evidence and, even if they were, arguments concerning his right to fees and costs are raised for the first time in the Addendum and were not present in the Motion to Amend. The Court may not consider these arguments on reconsideration. Nor would consideration of Mr. Anderson's costs in navigating the bankruptcy process alter the Court's Order, because Mr. Anderson's expenses in litigating the Motion to Amend and the Motion were not material to the Order.

In Addendum Exhibit H, Mr. Anderson attaches a letter he states he received from Kroll, which, he argues, shows Kroll initially valued his proof of claim at $3.5 million. *Id.* Ex. H. The letter is not dated and appears to have been issued sometime in 2023 (the letter stating, "This serves as confirmation that the proof of claim form you submitted in connection with the Endo International plc. Jointly administered chapter 11 bankruptcy case has been received by" Kroll on Monday June 12, 2023, or Monday, June 19, 2023). *Id.* Ex. H at 1, 3. Mr. Anderson does not explain how these documents would constitute newly discovered evidence and, even if they were newly discovered evidence, he raises arguments concerning the "glaring discrepancy" between his

31

claim valuation and his estimated pro rata distribution for the first time in his Addendum. *Id.* at 10.[24] The Court cannot consider such arguments on a motion for reconsideration. Even were the Court to consider such an argument, the alleged discrepancy between the initial claim valuation and the estimated pro rata distribution would not alter the Court's Order, because the amount of the distribution to be disbursed to Mr. Anderson was not material to the Order.

Mr. Anderson attaches as Exhibit I to the Addendum what he describes as medical records which detail injuries from an assault he suffered in November of 2011. *Id.* Ex. I. Mr. Anderson asserts that this record demonstrates the "direct and fatal link" between the Debtors' products "(which rendered Petitioner vulnerable) and the severe permanent physical harm endured by" him. Motion at 3. These records were in Mr. Anderson's possession when he filed the Motion to Amend, as he attached them as an exhibit to a motion he previously filed in these Chapter 11 Cases.[25] They do not constitute newly discovered evidence. Even were the Court to consider this evidence newly discovered, it would not alter the Court's determination in the Order, because the extent of Mr. Anderson's prior injuries was not material to the Order.

Exhibits A and B to the Second Supplement are dated May 12 and May 13, 2025, respectively. Second Supplement Exs. A, B. They did not exist when the Court issued the Order and are therefore not "newly discovered evidence." *See Loftus*, 2022 WL 2829476, at *2. The same holds true for Exhibit C, a notice of annual general meeting of shareholders and proxy statement, dated April 3, 2025.

---

[24] Although Mr. Anderson sought payment of his claims in full in the Motion to Amend, he raised arguments concerning the disparity between the estimated pro rata distribution and the value of his claims for the first time in the Addendum. Addendum at 2.

[25] *See generally, Objection to Motion,* Endo ECF No. 4694.

Exhibit D, a document titled "Mallinckrodt PLC, Process for Transferring Shares," is dated February 26, 2025, and thus predates the Order. Second Supplement Ex. D. However, Mr. Anderson has not shown why "the proffered evidence was unavailable despite the exercise of due diligence." *See in re Rezulin Prods. Liab. Litig.*, 224 F.R.D. at 350. The Court therefore cannot consider Exhibit D as newly discovered evidence. Even were the Court to consider this evidence newly discovered, it would not alter the Court's determination in the Order, because the process Mallinckrodt has adopted for transferring shares was not material to the Order.

To summarize, in the Order the Court determined:

- The Plan was a final, non-appealable order that was binding on Mr. Anderson pursuant to section 1141(a) of the Bankruptcy Code, Order at 12.
- Modification of the Plan was not permitted pursuant to section 1127(b) of the Bankruptcy Code, Order at 14.
- If modification pursuant to section 1127(b) of the Bankruptcy Code is available, Mr. Anderson cannot state grounds for relief under section 1127(b) because it is undisputed that the Fourth Amended Plan has been substantially consummated, Order at 14.
- Mr. Anderson cannot revoke the Confirmation Order pursuant to Section 1144, as such request for relief is time-barred and he cannot not show grounds for revoking the Confirmation Order, Order at 14-15.
- Mr. Anderson's reliance on section 105(a) of the Bankruptcy Code is misplaced, as it would be beyond the Court's equitable powers to "override explicit mandates of other sections of the Bankruptcy Code." Order at 15-16 (quoting *Law*, 571 U.S. at 421).

Mr. Anderson has not shown that these determinations were clear errors of law and has put forth no newly discovered evidence nor pointed to any controlling precedent that would alter the Court's Order.

## <u>CONCLUSION</u>

Based on the foregoing, the Court denies the Motion.

IT IS SO ORDERED.

Dated: May 25, 2025
        New York, New York

/s/ *James L. Garrity, Jr.*

Hon. James L. Garrity, Jr.
U.S. Bankruptcy Judge