| | | |
|---|---|---|
| UNITED STATES BANKRUPTCY COURT<br>SOUTHERN DISTRICT OF NEW YORK | | NOT FOR PUBLICATION |
| ------------------------------------------------------- x | | |
| In re: | : | Case No. 22-22608 (JLG) |
| | : | Chapter 11 |
| Branded Operations Holdings, Inc., et al., | : | |
| | : | |
| Debtors.[1] | : | (Jointly Administered) |
| ------------------------------------------------------- x | | |

### MEMORANDUM DECISION SUSTAINING PLAN ADMINISTRATOR'S FIFTH OMNIBUS OBJECTION TO CERTAIN CLAIMS TO BE RECLASSIFIED

**APPEARANCES:**

SEWARD & KISSEL LLP
*Counsel to the Plan Administrator*
Patrick J. Bartels
One Battery Park Plaza
New York, NY 10004
By:   Catherine V. LoTempio

Robert Fox
*Appearing Pro Se*
2844 N Summit Ave
Milwaukee, WI 53211

Denise Sneed Savage
*Appearing Pro Se*
270 Davie Smith St.
Roanoke Rapids, NC 27870

---

[1] The last four digits of Debtor Branded Operations Holdings Inc.'s tax identification number are 6945. Due to the large number of debtors in these Chapter 11 Cases, a complete list of the debtor entities and the last four digits of their federal tax identification numbers is not provided herein. A complete list of such information may be obtained on the website of the Debtors' claims and noticing agent at https://restructuring.ra.kroll.com/Endo. The location of the Debtors' service address for purposes of these Chapter 11 Cases is: 5330 Carmel Crest Lane, Charlotte, NC 28226.

**HON. JAMES L. GARRITY, JR.**
**U.S. BANKRUPTCY JUDGE**

## INTRODUCTION[2]

Patrick J. Bartels is the Plan Administrator of the remaining debtors of Endo International plc and its Debtor affiliates in these chapter 11 cases (the "Chapter 11 Cases"). On or about May 23, 2025, the Plan Administrator filed his Fifth Omnibus Objection to Claims (the "Objection").[3] In support of the Objection, the Plan Administrator submitted the declaration of Erin McKeighan (the "McKeighan Decl.").[4] In the Objection, the Plan Administrator seeks entry of an order pursuant to sections 105(a), 502, and 558 of title 11 of the United States Code (the "Bankruptcy Code"), and rule 3007 of the Federal Rules of Bankruptcy Procedure, reclassifying certain priority claims.

Robert Fox and Dr. Denise Sneed Savage each filed a claim in the Chapter 11 Cases seeking priority treatment under the Bankruptcy Code (collectively, the "Claims").[5] Each claim is subject to the Objection. Mr. Fox and Dr. Savage are acting pro se herein. Each filed a response in

---

[2] Capitalized terms used but not otherwise defined herein shall have the meaning ascribed to such terms in the confirmed *Fourth Amended Joint Chapter 11 Plan of Reorganization of Endo International plc and its Affiliated Debtors,* Endo ECF No. 3849 (the "Fourth Amended Plan," or the "Plan") or the *Findings of Fact, Conclusions of Law, and Order (I) Confirming the Fourth Amended Joint Chapter 11 Plan of Reorganization of Endo International PLC and its Affiliated Debtors and (II) Approving the Disclosure Statement with Respect Thereto*, Endo ECF No. 3960 (the "Confirmation Order"). References to "Endo ECF No. __" are to documents filed on the electronic docket of Case No. 22-22549. References to "ECF No. __" are to documents filed on the electronic docket of Case No. 22-22608.

[3] *Notice of Plan Administrator's Fifth Omnibus Objection to Certain Claims to be Reclassified as (I) Class 4(D) Ranitidine Claims, (II) Class 4(E) Generics Price Fixing Claims, (III) Class 7(A) Pi Opioid Claims, (IV) Class 4(B) Other General Unsecured Claims, and (V) Class 10 Settling Co-Defendant Claims*, ECF 122.

[4] *Declaration of Erin Mckeighan in Support of Plan Administrator's Fifth Omnibus Objection to Certain Claims to be Reclassified as (I) Class 4(D) Ranitidine Claims, (II) Class 4(E) Generics Price Fixing Claims, (III) Class 7(A) Pi Opioid Claims, (IV) Class 4(B) Other General Unsecured Claims, and (V) Class 10 Settling Co-Defendant Claims*, ECF No. 122-2.

[5] Mr. Fox filed Claim No. 14911 (the "Fox Claim"), and Dr. Savage filed Claim No. 10515 (the "Savage Claim").

2

support of their respective claim and in opposition to the Objection (the "Fox Response"[6] and "Savage Response,"[7] respectively, and together, the "Responses"). On June 24, 2025, the Court held a hearing on the Objection. At that time, the Court adjourned its consideration of the Objection to the Claims and directed the Plan Administrator to file a reply to the Responses. The Court authorized Mr. Fox and Dr. Savage to respond to the Plan Administrator's reply.[8] On June 24, 2025, the Court sustained the Objection (excluding the Claims) (the "Decision and Order").[9]

The matter before the Court is the adjourned hearing on the Objection as it relates to the Claims. The Plan Administrator filed an omnibus reply to the Responses (the "Reply"),[10] together with the supplemental declaration of Erin McKeighan (the "Supplemental McKeighan Decl.")[11] in support of the Reply. Dr. Savage filed a sur-reply to the Reply (the "Savage Sur-Reply").[12] Mr. Fox did not supplement his response. On July 24, 2025, the Court conducted a hearing on the Objection to the Claims and heard argument from the Plan Administrator. Dr. Savage and Mr. Fox did not appear at the hearing. Given their pro se status, in assessing the merits of the Objection, the Court construes the Reponses and their arguments in a light most favorable to them.

---

[6] *Objection of Claim Reclassification as Restitution*, ECF No. 131. The Court refers to the PDF pagination of Mr. Fox's objection.

[7] *Objection*, ECF No. 138. Dr. Sneed lists two other names in the caption of her document: "Juluis Alton Sneed (son) & Jules Sneed (son)."

[8] *Minutes of Proceeding*, ECF No. 143.

[9] *Memorandum Decision Sustaining Plan Administrator's Fifth Omnibus Objection to Certain Claims to be Reclassified*, ECF No. 141.

[10] *Plan Administrator's Omnibus Reply in Support of the Fifth Omnibus Objection to Certain Claims to be Reclassified as (I) Class 4(D) Ranitidine Claims, (II) Class 4(E) Generics Price Fixing Claims, (III) Class 7(A) PI Opioid Claims, (IV) Class 4(B) Other General Unsecured Claims, and (V) Class 10 Settling Co-Defendant Claims*, ECF No. 144.

[11] *Supplemental Declaration of Erin McKeighan in Support of the Plan Administrator's Fifth Omnibus Objection to Certain Claims to be Reclassified as (I) Class 4(D) Ranitidine Claims, (II) Class 4(E) Generics Price Fixing Claims, (III) Class 7(A) PI Opioid Claims, (IV) Class 4(B) Other General Unsecured Claims, and (V) Class 10 Settling Co-Defendant Claims*, ECF No. 144, Ex. A.

[12] *Second Rebuttal,* ECF No. 157.

3

For the reasons stated herein, the Court sustains the Objection and reclassifies the Savage Claim as a Class 4(D) Ranitidine Claim, and the Fox Claim as a Class 11 Other Opioid Claim.

## JURISDICTION

This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the Amended Standing Order of Referral of Cases to Bankruptcy Judges of the United States District Court for the Southern District of New York (M-431), dated January 31, 2012 (Preska, C.J.). This matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2). In addition, pursuant to the Confirmation Order and Plan, this Court has retained jurisdiction over the Chapter 11 Cases and all matters arising out of, or related to, the Chapter 11 Cases and the Plan, including, among other things, to enter and implement such orders as may be necessary or appropriate to execute, implement, or consummate the provisions of the Plan, the Confirmation Order, and any agreements and documents in connection with or contemplated by the Plan, the Confirmation Order, and the Disclosure Statement.

## BACKGROUND[13]

**The Savage Claim and Response**

The Savage Claim does not include a dollar amount, but in her response, Dr. Savage asserts that she is seeking damages of $500,000 plus interest. Savage Response ¶ 6. On the claim form, she does not respond to the question "[w]hat is the basis of the claim?", although she asserts that the claim is entitled to priority status under sections 503(b)(9) and 507(a)(4) of the Bankruptcy Code. She also states that the claim arises from Juluis Alton Sneed's use of ranitidine and the

---

[13] The Decision and Order includes a discussion of the background of the Chapter 11 Cases. Familiarity with the Decision and Order is presumed. The Court discusses only the facts relating to the Claims.

4

resulting "multiple myeloma cancers" that caused his death. She represents her claim is based on personal injury to "Mr. Juluis Alton Sneed (deceased)."[14]

Dr. Savage objects to the reclassification of the Savage Claim. *Id.* at 1. She argues that "our claims remain the same because we do deserve a better recovery than other similarly situated creditors since my doctor's notes should have been provided to [the Plan Administrator]." *Id.* She asserts that the Plan Administrator "should have obtained all the legal documents" and that "[i]f he would have done this [it] would not be necessary for a rebuttal at all." *Id*. She states, "[t]here [was] substantial evidence from my [therapist and doctor] . . . sharing my experiences with taking [o]pioid[] medications for depression and other diagnoses . . . ." *Id.* She argues that she has "worked just as hard to present adequate evidence and was available to participate in a past [ranitidine] hearing [and] was not even allowed to talk" in violation of her First and Fourth Amendment rights. *Id.* She states that the Plan Administrator should "not try to lower [her] categories." *Id.*

Dr. Savage filed several exhibits with her response. *See id.*, Ex. 1-18. They include what appear to be a reformatted copy of the PI Trust's claim form, a list of medications prescribed to Dr. Savage, printouts of several internet searches concerning certain medications, receipts from Dr. Savage's medical treatments, and copies of filings in and orders from the United States District Court for the Southern District of Florida (the "Florida District Court") and the Eleventh Circuit Court of Appeals (the "Eleventh Circuit").

---

[14] In the Savage Response, Dr. Savage cites additional cases filed in the Florida District Court and the Eleventh Circuit in relation to Mr. Juluis Alton Sneed's injuries arising out of the use of Ranitidine products. Savage Response ¶ 3-5 (referring to *Sneed Savage et al. v. Zantac (Ranitidine) Products Liability Litig.*, Case No. 9:22-cv-81507-RLR (S.D. Fla.) and *Sneed Savage v. Glenmark Pharma., Inc. USA et al.*, Case No. 23-11375 (11th Cir.)). The records reflect that on March 1, 2023, the Eleventh Circuit dismissed Dr. Savage's appeal of certain non-final orders entered by the Florida District Court for lack of jurisdiction on (11th Cir. Case No. 23-11575 at Dkt. 24-1), and that on October 21, 2022, the district court administratively closed Dr. Savage's individual case (S.D. Fla. Case No. 22-cv-81507 at Dkt. 7). These cases have no bearing on the Savage Claim or the Plan Administrator's Objection thereto.

**The Fox Claim and Response**

The Fox Claim asserts a $6.9 million claim against Endo. Mr. Fox states the claim is based on "services performed, wages lost, earning capacity limited." He represents that half his claim, $3.45 million, is entitled to priority status under section 507(a)(5) of the Bankruptcy Code. On the claim form he marked "yes" in the response to the question, "[i]s your claim based on a non-opioid related personal injury of the Creditor?" He describes the basis of his claim as "I as a doctor was prescribing opioid medication and lost wages and earning capacity due to debtors."

In his response, Mr. Fox states that he is an "Advanced Practice Nurse Practitioner and a Doctor of Acupuncture and Chinese Medicine licensed and practicing in the State of Wisconsin." Fox Response at 1. He says that he faced a disciplinary proceeding for prescribing Endo's opioids to opioid addicted patients, and that, as a consequence, he suffered a loss of earnings and earning potential and experienced post-traumatic stress disorder. *Id.*

Mr. Fox seeks compensation for the direct and consequential damages resulting from the Debtors' conduct related to the opioid crisis. *Id.* at 1-3. He complains that the Debtors seek to "reclassify, subordinate, or otherwise diminish the status of [his] claim in a manner inconsistent with the facts, the equities of this case, and applicable bankruptcy law based on compensatory damages and punitive damages relating to loss of earning capacity and societal statement." *Id.* at 3. Mr. Fox objects to any "reclassification, reduction, subordination, or disallowance of his claim and asserts that his claim should be allowed in full with PRIORITY as a valid, unsecured, and compensable claim arising from actual and consequential damages suffered in connection with the Debtors' conduct." *Id.* He asks the Court to "[a]llow the claim in full with PRIORITY as a general unsecured claim not subject to subordination or reclassification . . . ." *Id.*

6

**The Reply**

The Plan Administrator explains that in the Objection, he "does not seek to disallow the claims asserted by Mr. Fox and Dr. Savage," but rather "objects to the classification of the Fox Claim and Savage Claim, because the claims are not entitled to the priority status they assert." Reply ¶ 5. He "requests that the Court reclassify the claims to the particular trust set up to handle such claim to ensure these claimants receive the same recovery as similarly situated creditors." *Id.* ¶ 7. He argues that the failure to do so, would result in Mr. Fox and Dr. Savage receiving unwarranted recoveries, at the expense of other similarly situated creditors. *Id.* ¶¶ 14, 23.

The Plan Administrator argues that as a matter of law, Dr. Savage cannot state an administrative expense priority claim under section 503(b)(9), because her claim is not on account of goods delivered to the debtor in the ordinary course of its business within twenty days prior to the commencement of the bankruptcy filing. *Id.* ¶ 18. He also contends that Dr. Savage's and Mr. Fox's claims for priority treatment under sections 507(a)(4) and (5), respectively, fail because neither was an Endo employee, and Mr. Fox was never a party to an Endo employee benefit plan. *Id.* ¶¶ 12, 21. The Plan Administrator requests that the Savage Claim should be reclassified to a Class 4(D) Ranitidine Claim. Reply ¶ 23; Objection ¶ 29; McKeighan Decl. ¶ 5.

In the Reply, the Plan Administrator refines his objection to the Fox Claim. The Objection seeks to reclassify the Fox Claim as a Class 7(A) PI Opioid Claim.[15] *See* Objection, Ex. 3 at 2. He

---

[15] The Plan defines the term "Opioid Claims" to mean—

> any and all Claims and Causes of Action, existing as of the Petition Date, against any of the Debtors in any way arising out of or relating to Opioids or Opioid Products manufactured or sold by any of the Debtors, any Non-Debtor Affiliate, any of their respective predecessors, or any other Released Party, in each case, prior to the Effective Date; provided, that, "Opioid Claims" shall not include Claims for indemnification (contractual or otherwise), contribution, or reimbursement arising out of or relating to Opioids or Opioid Products manufactured or sold by any Debtor, any Non-Debtor Affiliate, or any of their respective predecessors, in each case, prior to the Effective Date. For the avoidance of doubt, "Opioid Claims" shall not include Future Opioid PI Claims.

advises that upon further consideration and review of the Plan, the Fox Claim, and the Fox Response, he believes that the claim should be reclassified to a Class 11 Other Opioid Claim.[16] Reply ¶ 13; Supplemental McKeighan Decl. ¶ 4. He asks the Court to reclassify the Fox Claim as an Other Opioid Claim.

**The Savage Sur-Reply**

In the Savage Sur-Reply, in part, Dr. Savage essentially reasserts the arguments and factual assertions set forth in the Savage Response. Further, she states that the "[o]pioids [c]ase includes only me. There shall be medications sent to prove I am due to remain in the top tier." Savage Sur-Reply at 1. Dr. Savage states that, attached as an exhibit to the sur-reply, are copies "of [her] employment with Halifax County Schools. The [B]randed Operations Company indicated in the [Reply] that you needed to have been employed with a school or other establishment. Here is my proof of my prior employment concerning opioids and my father's unhealthy environment that caused him to die from mesothelioma." *Id.* Dr. Savage also complains of her treatment by the Florida District Court and the Eleventh Circuit, and states that she is requesting "$500,000 dollars for each claim individually with interest that includes OPIOIDS, ZANTAC, MESOTHELLOMA, CIVIL SUIT." *Id.* at 3. Dr. Savage attaches several exhibits to the Savage Sur-Reply.[17]

---

Plan § 1.1.356.

[16] The Plan defines "Other Opioid Claims" to mean—

> any and all Opioid Claims, if any, that are not (a) Present Private Opioid Claims; (b) Future PI Claims; (c) State Opioid Claims; (d) Tribal Opioid Claims; (e) Settling Co-Defendant Claims; (f) Canadian Provinces Claims; (g) Public School District Claims; or (h) Local Government Opioid Claims. For the avoidance of doubt, 'Other Opioid Claims' includes any Claim that is Allowed after the Effective Date under sections 502(h) (or any Claim asserted as a consequence of the recovery of property under chapter 5 of the Bankruptcy Code) and 502(j) of the Bankruptcy Code, which Allowed Claim otherwise satisfies this definition of 'Other Opioid Claims.'

Plan § 1.1.366.

[17] These exhibits consist of: (i) a notice of venue transfer from the Florida District Court, (ii) a notice dated September 15, 2023, from the Eleventh Circuit notifying the Clerk of the Court for Florida District Court that an appeal in the case *Glenmark Pharmaceuticals, Inc. USA et.al. v. Denise Savage, et al* was dismissed and appellant's motion to reinstate the appeal was granted by the clerk, (iii) a "Redaction Requirements and Privacy Policy" from the

## LEGAL PRINCIPLES

A filed proof of claim is "deemed allowed, unless a party in interest . . . objects." 11 U.S.C. § 502(a). Absent an objection, a properly executed and filed proof of claim constitutes *prima facie* evidence of the validity and amount of the claim. *See In re Metex Mfg. Corp.*, 510 B.R. 735, 740 (Bankr. S.D.N.Y. 2014) (citing Fed. R. Bankr. P. 3001(f)). The validity and amount of the Claims are not at issue herein. Rather, the Plan Administrator challenges the priority status of the Fox and Savage Claims.

"[A]ll creditors in a bankruptcy case who claim priority status have the burden of showing that they are entitled to the asserted priority under the Bankruptcy Code. . . ." *Sec. Inv. Prot. Corp. v. Stratton Oakmont, Inc.*, 229 B.R. 273, 278 (Bankr. S.D.N.Y.), *aff'd sub nom. Arford v. Miller*, 239 B.R. 698 (S.D.N.Y. 1999), *aff'd sub nom. In re Stratton Oakmont*, 210 F.3d 420 (2d Cir. 2000); *see, e.g., In re Bethlehem Steel Corp.*, 479 F.3d 167, 172 (2d Cir. 2007) ("The burden of proving entitlement to priority payment as an administrative expense . . . rests with the party requesting it."). Given the presumption in bankruptcy cases that the debtor's assets will be equitably distributed among creditors, the statute granting priority status is narrowly construed because priority claims reduce the total funds available for claimants. *In re Sears Holdings Corp.*, No. 18-23538, 2023 WL 3470475, at *2 (Bankr. S.D.N.Y. May 15, 2023). The Court routinely considers objections to claims' priority status. *See, e.g., In re Residential Cap., LLC*, No. 12-12020, 2010 WL 11827244, at *2 (Bankr. S.D.N.Y. June 4, 2010).

---

Florida District Court addressed to Dr. Savage, and (iv) several exhibits that purport to show that Dr. Savage was employed as a substitute teacher for Halifax County Schools.

9

Section 503 of the Bankruptcy Code governs the allowance of administrative expense claims. *See* 11 U.S.C. § 503. The Savage Claim seeks the allowance of a claim under section 503(b)(9). It provides that:

> (b) After notice and a hearing, there shall be allowed administrative expenses, other than claims allowed under section 502(f) of this title, including –
>
> . . .
>
> (9) the value of any goods received by the debtor within 20 days before the date of commencement of a case under [title 11] in which the goods have been sold to the debtor in the ordinary course of such debtor's business.

11 U.S.C. § 503(b)(9).

Section 507(a) of the Bankruptcy Code contains ten categories of claims that are entitled to priority in bankruptcy cases. *See* 11 U.S.C. § 507(a). Allowed claims under section 503(b)(9) are accorded priority under section 507(a)(2). Sections 507(a)(4) and 507(a)(5) grant priority status to creditors' claims for unpaid "wages, salaries, or commissions" and for unpaid contributions to "an employee benefit plan," respectively:

> (a) The following expenses and claims have priority in the following order:
>
> . . .
>
> (4) Fourth, allowed unsecured claims, but only to the extent of $17,150 . . . for each individual or corporation, as the case may be, earned within 180 days before the date of the filing of the petition . . . for—
>
> (A) wages, salaries, or commissions, including vacation, severance, and sick leave pay earned by an individual;
>
> . . .
>
> (5) Fifth, allowed unsecured claims for contributions to an employee benefit plan–
>
> (A) arising from services rendered within 180 days before the date of the filing of the petition . . . but only

> (B) for each such plan, to the extent of—
>
> (i) the number of employees covered by each such plan multiplied by $17,150; less
>
> (ii) the aggregate amount paid to such employees under paragraph (4) of this subsection, plus the aggregate amount paid by the estate on behalf of such employees to any other employee benefit plan.

11 U.S.C. §§ 507(a)(4), (a)(5).

Below, the Court applies these legal principles in reviewing the Plan Administrator's Objection to the Claims. In doing so, and in light of the pro se status of Dr. Savage and Mr. Fox, the Court will construe the Claims and Responses "liberally to raise the strongest arguments [they] suggest[]. Nonetheless, [the] pro se [claimants] must state . . . plausible claim[s] for relief." *Walker v. Schult*, 717 F.3d 119, 124 (2d Cir. 2013) (internal citations, quotation marks, and brackets omitted); *see also Kimber v. GMAC Mortg., LLC (In re Residential Cap., LLC)*, 489 B.R. 489, 494 (Bankr. S.D.N.Y. 2013) ("Complaints drafted by pro se plaintiffs are to be construed liberally, but they must nonetheless be supported by specific and detailed factual allegations sufficient to provide the court and the defendant with 'a fair understanding of what the plaintiff is complaining about and . . . whether there is a legal basis for recovery.'" (quoting *Iwachiw v. New York City Bd. of Elections*, 126 F. App'x 27, 29 (2d Cir. 2005) (summary order))).

## DISCUSSION

**The Savage Claim**

Dr. Savage objects to the reclassification of the Savage Claim and requests that the claim remain in its current classification. Savage Response ¶ 1. In support of her claim, Dr. Savage highlights her compliance with Court directions and procedures. *Id.* ¶ 2. She asserts that her claim is based on her "experiences with taking [o]pioid[] medications for depression and other diagnoses" and other ranitidine claims she brings on behalf of a decedent. *Id.* at 1-2. She argues

11

that the Objection improperly seeks to "lower [her] category" to her detriment and that it refutes the validity of her claim. *Id.* ¶ 1. However, as noted previously, in the Objection, the Plan Administrator does not challenge the validity of the Savage Claim. Instead, he contends, and the Court agrees, that the claim is not entitled to priority treatment under either section 503(b)(9) or section 507(a)(4) of the Bankruptcy Code.

Section 503(b)(9) applies only to claims relating to "goods" received by a debtor in the ordinary course of its business within twenty days prior to the commencement of the bankruptcy filing. *See* 11 U.S.C. § 503(b)(9); *see also In re Sears Holdings Corp.*, 2023 WL 3470475, at *2 ("[C]laimants should be granted an administrative expense claim [under section 503(b)(9)] for the value of any goods received by the debtor within 20 days before the date of commencement of the bankruptcy case that are sold to the debtor in the ordinary course of business."). "[T]he UCC provides the definition of 'goods' for the purpose of interpreting Section 503(b)(9)." *In re Great Atl. & Pac. Tea Co., Inc.*, 538 B.R. 666, 674 (S.D.N.Y. 2015) (holding electricity supplied by creditor was not a "good" under the UCC definition). The UCC defines goods as "all things (including specially manufactured goods) which are movable at the time of identification to the contract for sale other than the money in which the price is to be paid, investment securities (Article 8) and things in action." UCC § 2-105. The Savage Claim does not arise out of the delivery of goods to the Debtors, within twenty days of the Petition Date, in the ordinary course of their businesses. The claim is therefore not entitled to administrative expense priority under section 503(b)(9) of the Bankruptcy Code. *See In re Endo Int'l plc*, No. 22-22549, 2024 WL 5114113, at *5 (Bankr. S.D.N.Y. Dec. 13, 2024) (holding claims that were not for goods supplied to the debtors were ineligible for section 503(b)(9) priority status).

Section 507(a)(4) accords priority status to claims of wages, salaries, or commissions, earned by an individual. 11 U.S.C. § 507(a)(4). It is undisputed that Dr. Savage was not an individual employee of any of the Debtors. The Savage Claim plainly is not on account of unpaid wages, salary or commissions. Because Dr. Savage did not have an employer-employee relationship with the Debtors, her claim is not entitled to priority status under 507(a)(4) of the Bankruptcy Code, which only "provides a wage priority for individual 'employees.'" *In re DeWitt Rehab. & Nursing Ctr., Inc.*, 476 B.R. 827, 829 (Bankr. S.D.N.Y. 2012). Indeed, "[n]o court has suggested that the wage priority benefits individuals who are not and have never been direct employees of the debtor." *Id.* Dr. Savage's arguments in the Savage Sur-Reply are unavailing, as a section 507(a)(4) claim is a claim for wages, salaries, or commissions earned by an employee of the Debtors, not a person who was employed by a non-debtor.

Class 4(D) Ranitidine Claims

> means any and all Claims against the Debtors (a) arising or relating to the allegation that, under certain conditions, the active ingredient in ranitidine medications can break down to form an alleged carcinogen (including Claims based on theories of product liability, breach of warranty, fraud, negligence, and unjust enrichment); and (b) for which a Proof of Claim was filed by the General Bar Date.

Plan § 1.1.457. The Savage Claim, notwithstanding arguments set forth in the Savage Response and Savage Sur-Reply, states that it arises from a personal injury to Juluis Alton Sneed that arose from his use of ranitidine and the resulting "multiple myeloma cancers" that caused his death. The Plan Administrator contends, and the Court agrees, that the Savage Claim should be reclassified as a Class 4(D) Ranitidine Claim.

**The Fox Claim**

Section 507(a)(5) of the Bankruptcy Code complements the wage priority for individual employees under section 507(a)(4). *In re DeWitt Rehab. & Nursing Ctr., Inc.*, 476 B.R. at 829. It

13

accords priority treatment for "contributions to an employee benefit plan, limited by a dollar amount and arising from 'services' rendered within a limited period prior to the bankruptcy filing." *Id.* at 828. Specifically, a claim for employee benefits must be based on services rendered by the debtor's "employees," subject to the restrictions in section 507(a)(5)(B). *In re Tropicana Ent., LLC*, No. 08-10856, 2015 WL 6112064, at *9 (Bankr. D. Del. Oct. 14, 2015).

Mr. Fox is not entitled to priority treatment pursuant to section 507(a)(5) of the Bankruptcy Code because he was not an individual employee of any of the Debtors. Further, the Fox Claim indicates that it is for services performed, lost wages, and a reduction in earning capacity, not contributions to an employee benefit program made by the Debtors. Because Mr. Fox did not have an employer-employee relationship with the Debtors, the Fox Claim is not entitled to priority status under section 507(a)(5) of the Bankruptcy Code. *In re DeWitt Rehab. & Nursing Ctr., Inc.*, 476 B.R. at 829.

The Fox Claim is not related to an opioid injury. It falls outside of the scope of Class 7(A) PI Opioid Claims. However, it is otherwise related to the allegations concerning the Debtors' manufacturing, marketing and sale of opioids. The Plan Administrator contends, and the Court agrees, that the Fox Claim should be reclassified as a Class 11 Other Opioid Claim.

## CONCLUSION

Based on the foregoing, the Court sustains the Objection to the extent set forth herein, and reclassifies the Savage Claim as a Class 4(D) Ranitidine Claim, and the Fox Claim as a Class 11 Other Opioid Claim. The Plan Administrator is directed to submit an order consistent with this Memorandum Decision.

IT IS SO ORDERED.

Dated: July 24, 2025
New York, New York

/s/ *James L. Garrity, Jr.*
Hon. James L. Garrity, Jr.
United States Bankruptcy Judge