July 7, 2025

Maria Ecke

Estate of David Jonathan Ecke

Richard Ecke

Andrew Ecke

Peter Sottile

C/o the Office of Maria Ecke

8 Glenbrook Drive

West Simsbury, CT 06092


United States District Court

Daniel Patrick Moynihan

500 Pearl Street

New York, NY 10007

Tel: 212-805-0136


In Re: Brand Operations Holding Case No. 22-22608

## DESIGNATION OF ITEMS TO BE INCLUDED IN THE RECORD
## CASE NO. 22-22608(JLG)

1. Bankruptcy proceedings are prohibiting WE THE PEOPLE, the Plaintiffs, from our due process, which is guaranteed by the 14*^ Amendment of the Constitution. "Due process is the legal requirement the state must respect all **Wherein; No State shall make or enforce any law** which shall abridge the privileges or immunities of citizens of the United States; nor shall any State deprive any person of LIFE, **liberty,** or **property,** without due **process of law;** nor deny to any person within its jurisdiction the equal protection of the laws.

2. Our family members are deceased and have been deprived of life, dying every day or still struggling with their afflictions as my other son does. He doesn't even have children after 12 years of marriage.

Could it be that Endo's drugs interfere or interfered with his reproductive system? The families, through various organizations, have been demanding due process, to no avail.

3. The legal rights that are owed to one person. Due process balances the power of the law of the land and protects the person from it. When a government harms a person without following the exact course of the law, this constitutes a due process violation, which offends the rule of law".

4. "Due process has also been frequently interpreted as limiting laws and legal proceedings so that Judges, instead of legislators, may define and guarantee fundamental fairness, justice, and justice. Everything that continues to go on during this Bankruptcy Plan has been up to discretion. The word discretion is defined in the Webster dictionary as FREEDOM. Our family members are DEAD and NOT FREE and those beloved ones' family members are left behind full of pain, anguish, grief, and so on and are NOT FREE of mental and physical disease due to Trauma inflicted by Endo and this "Plan".

5. Plaintiffs are informed and believe, and based thereon allege, that in committing the acts alleged herein, every managing agent, agent, representative, and/or employee of the Defendants was working within the course and scope of said agency, representation, and/or employment with the knowledge, consent, ratification, and authorization of the Defendants and their directors, officers and/or managing agents

6. Once it was determined that Opana was highly addictive and killing humans, the product should have been referred back to the DEA for removal from the public marketplace place and criminal action should have ensued. The physicians should have been given the notice to put patients on another form of medication that would not kill nearly an entire generation and traumatize a large part of society as a whole. Those of you, Lawyers and the Sackler Family, how would you like It If your child looked up at you and said, "My heart hurts. Mom, I think that I am going to die soon." I am sure that your children never had those vile drugs.

7. Fourteenth Amendment of the US Constitution - "Rights Guaranteed: Privileges and Immunities of Citizenship, Due Process, and Equal Protection. All persons born or naturalized in the United

States, and subject to the jurisdiction thereof, are citizens of the United States and the State wherein they reside*

8. What world do we live in where a corporate giant conglomerate company such as Endo can make a product "pain reliever", Opana, and sell it to the public, and as we well know they knew it was highly addictive at the onset? After selling it to their unsuspecting customers through their doctors, who received buybacks established a drug dealer relationship as if they were selling heroin off the city streets in the back alleys. Finally, after way too many people had become addicted to their Pandora Box trick slipped secretively into unsuspected buyers as If it were a harmless candy bar. The public and Government watch dogs, way too late discovered Endo was lying and knew from the beginning it was highly addictive. To boot, Endo came out and said it was the customer's fault for taking too much. They blamed their product on customer use. How dare they!11 How dare they try to turn it back around and blame their poor, naïve customers who were told from the beginning, and on their label mark it was not addictive. And now we find out that Endo is being rewarded for its criminal activity. What if the Marlboro cigarette company which killed millions of people with their cancer-causing sticks that they also denied were harmful, all of a sudden, the Government gave them the same bonus deal and a reward for their callousness. Or what if Takata Air Bags who were put into millions of cars and were defective and killed many innocent people were all of a sudden told "Oh, that's too bad but don't worry our government will look after your company and fill your pockets with bonus money and reward you for your criminal engineering skills that were in default. Now, back to Endo produced a product, lied about its addictiveness, and sold it to many innocent families who are now living a nightmare, who have lost their loved ones, and their lives are ruined. Now we find out they are going to be compensated and rewarded for their killing of many poor victims. Unbelievable!! Once it was determined that Opana was highly addictive and killing humans, the product should have been referred back to the DEA for removal from the public marketplace.

9. Any agreement that would permit a Bankruptcy that takes away the Plaintiff's rights of due process and

permits a corporation and the people who run these Corporations to absolve themselves from criminal prosecution while humans continue to die is against the Law of the Constitution. Just remember: "Mom, my heart hurts, I think I'm going to die soon." I'll never forget this statement until I die.

10. It is of record: Endo. Is Endo allowed by our government to use.the Bankruptcy Court to allow Endo to walk away with its wealth and away from criminal prosecution?

## CLAIM ONE

## STRICT LIABILITY - DESIGN DEFECT

## (Against all Defendants)

11. Plaintiffs incorporate by reference every allegation in the preceding paragraphs as if fully stated herein.

12. Plaintiffs bring a strict liability claim against the Defendants for defective design.

13. At all times relevant to this, litigation. Defendants engaged in the business of testing, developing, designing, manufacturing, marketing, selling, distributing, and promoting Opana, which is defective and unreasonably dangerous to the consumers, including Plaintiffs, thereby placing Opana into the stream of commerce. These actions are

## DEMAND FOR DAMAGES AND JURY TRIAL Rule 9015

14. Defendants knew of the subject's pain pills' defective and unreasonably dangerous nature but continued to promote and market Opana.

## NEGLIGENCE (Against All Defendants)

15. Plaintiffs incorporate by reference every allegation outlined in the preceding paragraphs as if fully stated herein. Defendants, directly or indirectly, caused Opana products to be sold, distributed, packaged, labeled, marketed, promoted, and/or used by Plaintiffs. At all times relevant to this litigation, Defendants had a duty to exercise reasonable care in the design, research, manufacture, marketing, advertisement, supply, promotion, packaging, sale, and distribution of Opana products, including the duty to take all reasonable steps necessary to manufacture, promote, and/or sell a product that was not unreasonably dangerous to consumers and users of the product.

16. This is the rebuttal to the procedural and substantive arguments raised by the Plan Administrator and the Trustee in opposition to the Petitioner's plea for essential equitable relief. The Plan does not provide a transparent accounting. This response demonstrates troubling circumstances presented by the documented evidence compel this Court to exercise its inherent equitable power. The Plaintiff asserts a process tainted by demonstrable calculation errors and opacity. The Court must oversee the fair and transparent implementation, and disproportionate costs would result. In an outcome that is an affront to justice for the very victims the Plan was functionally designed to compensate. The responses of the Plan Administrator and the Plan's Trustee fail to justify the distribution methodology applied to the victim's funds. This unacceptable situation compels this Court, sitting as a court of equity with a solemn duty to ensure justice, to look beyond procedural form and address the substance of the inequity and misconduct impacting the administration of a court-supervised trust. In addition, the actual victims have not been able to mediate as the States and Municipalities have. We have not heard from anyone. This full scope and undeniable Impact of glaring inequity, particularly the tangible result of the calculation leading to the $390 payout, could only have fully materialized and become clear after confirmation and the commencement of the distribution process. Any suggestion that the Plaintiff failed to raise these specific issues sooner ignores the fact that the critical evidence of the unjust outcome (the $390 payout) and the lack of transparency became available post-confirmation, here the challenge is the post-confirmation execution of the distribution process itself. When the actual victim's fund is revealed to be a mere $390, it supports the assertion that the fund available for victims was intentionally minimized through prior actions, this only materially ripened into undeniable evidence of injustice upon the revelation of the actual distribution amount.

17. The plaintiff respectfully implores this Court to excise its inherent and necessary powers to order full transparency from the PI Trust, scrutinize the distribution calculation, investigate the issues raised regarding administration and prior conduct, and grant the equitable relief, including a Court-determined compensation amount, payment of consequential costs, ongoing funding from the reorganized entity,

and a final decree with a clear timeline and enforcement mechanisms.

## DEMAND FOR JURY TRIAL

18. Defendants' Opana products, as researched, tested, developed, designed, licensed, manufactured, packaged, labeled, distributed, sold, and marketed by Defendants were defective in design and formulation in that when they left the hands of the Defendants' manufacturers and/or suppliers, they were unreasonably dangerous and dangerous to an extent beyond that which an ordinary consumer would contemplate.

19. At all times relevant to this litigation, the Defendants had a duty to exercise reasonable care in the marketing, advertisement, and sale of Opana products. Defendants' duty of care owed to consumers and the general public included providing accurate, true, and correct information concerning the risks of using Opana and appropriate, complete, and accurate warnings concerning the potentially addictive effects of Opana. At all times relevant to this litigation.

    Defendants knew or, in the exercise of reasonable care, should have known of the hazards and dangers of Opana.

20. Accordingly, at all times relevant to this litigation. Defendants knew or, in the exercise of reasonable care, should have known that the use of Opana could cause or be associated with Plaintiffs' injuries and thus created a dangerous and unreasonable risk of injury to the users of these products, including Plaintiffs,

21. Defendants also knew or, in the exercise of reasonable care, should have known that users and consumers of Opana were unaware of the risks and the magnitude of the risks associated with the use of Opana.

22. As such. Defendants breached their duty of reasonable care and failed to exercise ordinary care in the design, research, development, manufacture, testing, marketing, supply, promotion, advertisement, packaging, sale, and distribution of its Opana products, in that Defendants manufactured and produced

knew or had reason to know of the defects inherent in its products, knew or had reason to know that a user's or consumer's exposure to the products created a significant risk of harm and unreasonably dangerous side effects, and failed to prevent or adequately warn of these risks and injuries. Despite the ability and means to investigate, study, and test products and to provide adequate warnings. Defendants have failed to do so. Indeed, Defendants wrongfully concealed information and have further made false and/or misleading statements concerning the safety and/or exposure to Opana. Defendants' negligence included, but is not limited to: a. Manufacturing, producing, promoting, formulating, creating, developing, designing, selling, and/or distributing Opana without thorough and adequate pre- and post-market testing. Manufacturing, producing, promoting, formulating, creating, developing, designing, selling, and/or distributing while negligently and/or intentionally concealing and failing to disclose the results of trials, tests, and studies of exposure to Opana and.

consequently, the risk of serious harm associated with human use of and exposure to Opana;

**DEMAND FOR JURY TRIAL.**

23. Failing to undertake sufficient studies and conduct necessary tests to determine whether or not Opana was safe for use. Failing to use reasonable and prudent cate in the design, research,

    manufacture, and development of Opana to avoid the risk of serious harm;.........

**DEMAND f OR DAMAGES AND JURY TRIAL Rule 9015**

24. Defendants knew of the subject's pain pills' defective and unreasonably dangerous nature but continued to promote and market Opana.

**NEGLIGENCE (Against All Defendants)**

25. Plaintiffs incorporate by refence every allegation outlined in the preceding paragraphs as if fully stated herein. Defendants, directly or indirectly, caused Opana products to be sold, distributed, packaged, labeled, marketed, promoted, and/or used by Plaintiffs. At all times relevant to this litigation. Defendants had a duty to exercise reasonable care in the design, research, manufacture, marketing, advertisement, supply, promotional, packaging, sale, and distribution of Opana products, including the duty to take all

reasonable steps necessary to manufacture, promote, and/or sell a product that was not unreasonably dangerous to consumers and users of the product. **DEMAND FOR JURY TRIAL**

26. Defendants' Opana products, as researched, tested, developed, designed, licensed, manufactured, packaged, labeled, distributed, sold, and marketed by Defendants were defective in design and formulation in that when they left the hands of the Defendants' manufacturers and/or suppliers, they were unreasonably dangerous and dangerous to an extent beyond that which an ordinary consumer would contemplate.

27. At all times relevant to this litigation. Defendants had a duty to exercise reasonable care in the marketing, advertisement, and sale of Opana products. Defendants' duty of care owed to consumers and the general public included providing accurate, true, and correct information

    concerning the risks of using Opana and appropriate, complete, and accurate warnings concerning the potentially addictive effects of Opana. At all times relevant to this litigation. Defendants knew or, in the exercise of reasonable care, should have known of the hazards and dangers of Opana.

28. Accordingly, at all times relevant to this litigation. Defendants knew or, in the exercise of reasonable care, should have known that the use of Opana could cause or be associated with Plaintiffs' injuries and thus created a dangerous and unreasonable risk of injury to the users of these products, including Plaintiffs,

29. Defendants also knew or, in the exercise of reasonable care, should have known that users and consumers of Opana were unaware of the risks and the magnitude of the risks associated with the use of Opana.

**DEMAND FOR JURY TRIAL**

30. As such. Defendants breached their duty of reasonable care and failed to exercise ordinary care in the design, research, development, manufacture, testing, marketing, supply, promotion, advertisement, packaging, sale, and distribution of its Opana products, in that Defendants *manufactured* and produced knew or had reason to know of the defects inherent in its products,

knew or had reason to know that a user's or consumer's exposure to the products created a significant risk of harm and unreasonably dangerous side effects, and failed to prevent or adequately warn of these risks and injuries. Despite the ability and means to investigate, study, and test products and to provide adequate warnings. Defendants have failed to do so. Indeed, Defendants wrongfully concealed information and have further made false and/or misleading statements' concerning the safety and/or exposure to Opana.

31. Defendants' negligence included, but is not limited to: a. Manufacturing, producing, promoting, formulating, creating, developing, designing, selling, and/or distributing Opana without thorough and adequate pre- and post-market testing. Manufacturing, producing, promoting. formulating, creating, developing, designing, selling, and/or distributing while negligently and/or intentionally concealing and failing to disclose the results of trials, tests, and studies of exposure to Opana and, consequently, the risk of serious harm associated with human use of and exposure to Opana; **DEMAND FOR JURY TRIAL**

32. Failing to undertake sufficient studies and conduct necessary tests to determine whether or not Opana was safe for use. Failing to use reasonable and prudent care in the design, research, manufacture, and development of Opana to avoid the risk of serious harm;......................................

33. Failing to design and manufacture Opana to ensure it was at least as safe and effective as other pain relievers on the market.

34. Failing to provide adequate instructions, guidelines, and safety precautions to those persons using pain relievers. Failing to disclose to Plaintiffs, users/consumers, and the general public that the use of Opana would lead to death or permanent disability;

35. Failing to warn Plaintiffs, consumers, and the general public that the product's risk of harm was unreasonable and that there were safer and effective alternative pain relievers available to Plaintiffs and other consumers. Systematically suppressing or downplaying contrary evidence about the risks, incidence, and prevalence of the side effects of Opana;

36. Representing that its Opana was safe for its intended use when, in fact. Defendants knew or should have known that the products were not safe for their intended purpose; DEMAND FOR **JURY TRIAL**

37. Declining to make or propose any changes to Opana labeling or other promotional materials that would alert the consumers and the general public of the risks of Opana Advertising, marketing, and recommending the use of Opana while and failing to disclose or warn of the dangers known by Defendants to be associated with or caused by the use of Opana; Continuing concealing to disseminate information to its consumers, which indicates or implies that Opana is not unsafe for use as a pain reliever; and

38. Continued the manufacture and sale of its products with the knowledge that the product was unreasonably unsafe and dangerous.

39. Defendants knew and/or should have known that it was foreseeable that consumers such as Plaintiffs would suffer injuries as a result of the Defendants' failure to exercise ordinary care in the manufacturing, marketing, labeling, distribution, and sale of Opana.

40. Plaintiffs did not know the nature and extent of the injuries that could result from the intended use of Opana Defendants' negligence was the proximate cause of the injuries, harm, and economic losses that Plaintiffs suffered, and will continue to suffer, as described herein;

## DEMAND FOR TRIAL BY JURY

41. Defendants' conduct, as described above, was reckless. Defendants regularly risk the lives of consumers and users of their products, including Plaintiffs, with full knowledge of the dangers of their products

42. Defendants made conscious decisions not to redesign, re-label, warn, or inform the unsuspecting public, including Plaintiffs. Defendants' reckless conduct, therefore, warrants an award of punitive damages.

43. As a proximate result of Defendants' wrongful acts and omissions in placing defective Opana into the stream of commerce without adequate warnings of the addiction. Plaintiffs have suffered and continue

to suffer severe and permanent physical and emotional injuries.

44. Plaintiffs have endured pain and suffering, have suffered economic losses (including significant expenses for medical care and treatment), and will continue to incur these expenses in the future.

45. WHEREFORE, Plaintiffs respectfully request that this Court enter judgment in Plaintiffs' favor for compensatory and punitive damages, together with interest, costs herein incurred, attorneys' fees, and all such other and further relief as this Court deems just and proper. Plaintiffs also demand a jury trial on the issues contained herein.

## CLAIM TWO

## BREACH OF IMPUED WARRANTIES (Against All Defendants)

46. Plaintiffs incorporate by reference every allegation outlined in the preceding paragraphs as fully stated herein.

## DEMAND FOR JURY TRIAL

47. At all times relevant to this litigation. Defendants engaged in the business of testing, developing, designing, manufacturing, marketing, selling, distributing, and promoting Opana, which is defective and unreasonably dangerous to consumers, including Plaintiffs, thereby placing Opana into the stream of commerce. These actions were under the ultimate control and supervision of the Defendants.

48. Before the time that Plaintiffs were exposed to the use of the aforementioned Opana, Defendants impliedly warranted to consumers and those exposed—including Plaintiffs—that Opana was of merchantable quality and safe and fit for the use for which they were intended.

49. Defendants, however, failed to disclose that Opana has dangerous propensities when used as intended and an increased risk of developing severe injuries, including Plaintiffs' injuries. Plaintiffs reasonably relied upon the skill, superior knowledge, and judgment of Defendants.

50. Plaintiffs are informed and believe, and based thereon allege, that in committing the acts, alleged herein, each and every managing agent, agent, representative, and/or employee of the

Defendants was working within the course and the scope of said agency, representation and/or employment with the knowledge, consent, ratification, and authorization of the Defendants and their directors, officers, and/or managing agents.

51. Plaintiffs are the intended third-party beneficiaries of implied warranties made by Defendants to the purchasers and/or users of their pain relievers, and as such. Plaintiffs are entitled to assert this claim.

52. Opana was expected to reach and did reach consumers and/or users, including Plaintiffs, without a substantial change in the condition in which they were manufactured and sold by Defendants.

53. At all times relevant to this litigation. Defendants were aware that consumers and users of their products, including Plaintiffs, would use Opana as marketed by Defendants, which is to say that Plaintiffs were foreseeable users of Opana.

54. Defendants intended that Opana be used in the manner in which Plaintiffs were exposed to it, and Defendants warranted each product to be of merchantable quality, safe, and fit for this use, despite the fact that Opana was not adequately tested and/or researched.

55. In reliance upon Defendants' implied warranty. Plaintiffs used or were exposed to Opana as instructed and labeled and in a foreseeable manner intended, recommended, promoted, and marketed by Defendants.

## DEMAND FOR TRIAL BY JURY

56. Plaintiffs could not have reasonably discovered or known thé risks of serious injury associated with Opana.

57. Defendants breached their implied warranty to Plaintiffs in that Opana products were not of merchantable quality, safe, or fit for their intended use, and/or adequately tested. Opana

58. has dangerous propensities when used as intended and can cause serious injuries, including those injuries complained of herein.

59. The harm caused by Opana fer outweighed its benefit, rendering the product more dangerous than an ordinary consumer or user would expect and more dangerous than alternative

products.

60. As a direct and proximate result of Defendants' wrongful acts and omissions. Plaintiffs have suffered severe and permanent physical and emotional injuries, including but not limited to addiction and death.

61. Plaintiffs have endured pain and suffering and have suffered economic loss.

62. Plaintiffs could not have reasonably discovered or known of the risks of serious injury associated with Opana. Defendants breached their implied warranty to Plaintiffs in that Opana products were not of merchantable quality, safe, or fit for their intended use, and/or adequately tested. Opana has dangerous propensities when used as intended and can cause serious injuries, including those injuries complained of herein. The harm caused by Opana products far outweighed their benefits, rendering Opana more dangerous than an ordinary consumer or user would expect and more dangerous than alternative products. As a direct and proximate result of Defendants' wrongful acts and omissions. Plaintiffs have suffered severe and permanent physical and emotional injuries, including but not limited to the. Plaintiffs have endured pain and suffering, have suffered an economic loss (including significant expenses for medical care and treatment), and will continue to incur these expenses in the future. WHEREFORE, Plaintiffs respectfully request that this Court enter judgment in Plaintiffs' favor for compensatory and punitive damages, together with interest, costs herein incurred, attorneys' fees, and all such other and further relief as this Court deems just and proper. Plaintiffs also demand a jury trial on the issues contained herein.

63. We are considered an administrative claim due to the changes in the confirmation order. I am requesting payment of Claim numbers -14934 for Richard Ecke, 14948 for Andrew Ecke, 10460 for the Estate of David Jonathan Ecke, 24525 for Peter Sottile, and 12096 for Maria Ecke through the MDTII or Opioid Credit Trusts withouj a Release.

64. I oppose the legal shield for the employees.

65. As Charles Anderson stated in Document No. 116, "As a beneficiary of a court-supervised trust established within the framework of this bankruptcy proceeding. Petitioner possesses an inherent

accountability and transparency from the Trustee regarding the management and distribution of trust assets intended for his compensation. To deny standing to this Petitioner under these circumstances, based on procedural arguments designed for different contexts, would effectively insulate the PI Trust's operations, including its questionable calculation methodology and use of funds, from necessary review by the very victims it was created to compensate. This would establish a dangerous precedent, create a perverse outcome where fiduciaries are shielded from beneficiary scrutiny, and violate fundamental principles of due process and fiduciary responsibility inherent in trust administration. Petitioner's standing is rooted in the direct, personal injury suffered as a result of the Debtor's products, actions, and the subsequent failures in the administration and distribution process designed to compensate victims. Arguments that standing is limited to specific plan modification contents ignore the Court's inherent supervisory power over its trusts and the beneficiaries' right to ensure proper administration, particularly when the integrity of the distribution is called into question by compelling evidence of mismanagement and miscalculation impacting their direct. Recovery." $390 is a slap on a mother's face who lost a child due to this vile drug. We only found out about $390 until after the confirmation.

## CONCLUSION

66. I am appealing for Relief and a Stay because the Defendants' conduct was reckless. Defendants regularly risk the lives of consumers and users of their product Opana, with full knowledge of the dangers of their products. Defendants made conscious decisions not to redesign, relabel, warn, or inform the Opana unsuspecting public. Defendants' reckless conduct, therefore, warrants an award of punitive damages. As a proximate result of the Defendants' wrongful acts and omissions in placing defective pain pills into the stream of commerce without adequate warnings of the hazardous nature, the Plaintiffs have suffered and continue to suffer severe and permanent physical and emotional injuries. Plaintiffs have endured pain and suffering, have suffered economic losses (including significant expenses for medical care and treatment), and will continue to incur these expenses in the future. WHEREFORE, Plaintiffs respectfully request that this Court enter judgment in Plaintiffs' favor for

compensatory and punitive damages, relief as this Court deems just and proper. Plaintiffs also demand a jury trial on the issues contained herein.

## DEMAND FOR JURY TRIAL

Plaintiffs hereby demand a jury trial so triable in this action.

Respectfully submitted.

/s/ Maria Ecke, Pro Se