**UNITED STATES BANKRUPTCY COURT**　　　　NOT FOR PUBLICATION
**SOUTHERN DISTRICT OF NEW YORK**

------------------------------------------------------- x
In re:　　　　　　　　　　　　　　　　:　　Case No. 22-22608 (JLG)
　　　　　　　　　　　　　　　　　　　:　　Chapter 11
Branded Operations Holdings, Inc., *et al.*,　:
　　　　　　　　　　　　　　　　　　　:
　　　　　　　　　　　Debtors.[1]　　:　　(Jointly Administered)
------------------------------------------------------- x

## MEMORANDUM DECISION AND ORDER DENYING MOTION

**APPEARANCES:**

SEWARD & KISSEL LLP
*Counsel for the Plan Administrator*
*Patrick J. Bartels*
One Battery Park Plaza
New York, NY 10004
By:　　Brian P. Maloney
　　　　Catherine V. LoTempio

CROSS & SIMON
*Counsel for the Trustee for the Endo PI Trust*
*Edgar C. Gentle, III*
1105 N. Market Street, Suite 901
Wilmington, DE 19801
By:　　Christopher P. Simon

CHARLES ELLIOTT ANDERSON, JR.
*Appearing Pro Se*
1205 California Ave. #2
Las Cruces, NM 88001

---

[1] The last four digits of Debtor Branded Operations Holdings Inc.'s tax identification number are 6945. Due to the large number of debtors in these Chapter 11 Cases, a complete list of the debtor entities and the last four digits of their federal tax identification numbers is not provided herein. A complete list of such information may be obtained on the website of the Debtors' claims and noticing agent at https://restructuring.ra.kroll.com/Endo. The location of the Debtors' service address for purposes of these chapter 11 cases is: 5330 Carmel Crest Lane, Charlotte, NC 28226.

**HON. JAMES L. GARRITY, JR.**
**U.S. BANKRUPTCY JUDGE**

**INTRODUCTION**[2]

Debtors' Confirmation Order is final and non-appealable; their Plan has gone effective.

Under the Plan, Charles Elliott Anderson, Jr. ("Movant") holds an allowed Class 7A-PI Opioid

Claim; it will be satisfied on a pro-rata basis out of the proceeds of the Endo Opioid PI Trust,

pursuant to the Endo PI Trust Distribution Procedures ("PI TDP").[3] On the ballot he submitted in

voting to reject the Plan, Movant elected to grant a third-party release (the "Non-GUC Release" or

"Release") in consideration for an additional payment under the Plan (defined below as the "Non-

GUC Multiplier").

In May 2025, the PI Trustee advised Movant that under the Plan, the estimated Award in

satisfaction of both his allowed Class 7A-PI Opioid Claim, and the Non-GUC Multiplier, is

approximately $1,600. On the heels of his receipt of that notice, Movant filed the motion before

the Court (the "Motion"),[4] and the supplements thereto,[5] seeking an order directing the PI Trustee

to pay his Claim in full, outside the terms of the Plan and the PI TDP. He also asks the Court to

---

[2] Capitalized terms used but not otherwise defined herein shall have the meaning ascribed to such terms in the confirmed *Fourth Amended Joint Chapter 11 Plan of Reorganization of Endo International plc and its Affiliated Debtors*, Endo ECF No. 3849 (the "Plan") or the *Findings of Fact, Conclusions of Law, and Order (i) Confirming the Fourth Amended Joint Chapter 11 Plan of Reorganization of Endo International PLC and its Affiliated Debtors and (II) Approving the Disclosure Statement with Respect Thereto*, Endo ECF No. 3960 (the "Confirmation Order"). References to "Endo ECF No. __" are to documents filed on the electronic docket of Case No. 22- 22549. References to "ECF No. __" are to documents filed on the electronic docket of Case No. 22-22608.

[3] The PI TDP are available at https://endopitrust.com/pi-opioid-claims/.

[4] *Motion of Charles Elliott Anderson Jr. for Entry of an Order (I) Compelling Immediate Payment of Deemed Allowed and Liquidated Claim; (II) Declaring Third-Party Releases Unenforceable as Applied to Movant; (III) Staying Pending Appeal; and (IV) Requesting an Evidentiary Hearing*, ECF No. 277. In referring to the Motion, the Court will cite to the PDF page numbers of the Motion.

[5] *See Motion to Correct Docket*, ECF No. 277 and Notice of Intent to File Motion to Vacate, ECF No. 283 (the "First Supplement"); *Emergency Supplemental Memorandum of Law Nunc Pro Tunc to December 17 Hearing; Notice of Deceptive Inducement Regarding Exhibit I; and Renewed Request for Indicative Ruling (Rule 8008)*, ECF No. 290 (the "Second Supplement").

declare as unconstitutional the consensual Non-GUC Release. This is not the first time Movant

has sought to alter the terms of the confirmed Plan. In his Motion to Modify Plan,[6] he sought

special treatment of his Claim, as he petitioned the Court for immediate payment of the full amount

of the Claim. The Court denied that motion, *see* Plan Modification Order,[7] and Movant's Motion

for Reconsideration[8] of the order, *see* Reconsideration Order.[9] The Court assumes familiarity with

those orders. Movant has appealed the Reconsideration Order to the District Court.[10]

Patrick J. Bartels, Jr., not individually but solely in his capacity as the Plan Administrator

for the post-confirmation debtors of Endo International plc and its Debtor affiliates in these

Chapter 11 Cases, and Edgar C. Gentle, III, Trustee of the Endo PI Trust (the "PI Trustee" and

together with the Plan Administrator, "Objectors"), filed a joint objection (the "Objection")[11] to

the Motion. Movant filed a response in opposition to the Objection (the "Response").[12]

The Court held a hearing on the Motion. The Plan Administrator and PI Trustee appeared

through their respective counsel. Movant appeared pro se. For the reasons stated herein, the Court

denies the Motion.

---

[6] *Motion: For Modification of the Plan of Reorganization and for Equitable Relief to: 1) Acceptance of Allowed Claim, 2) Designate Surviving Victim Status, 3) Establish Separate, Segregated Protective Trust for all "Surviving Victims" and 4) Directing Full Payment of Allowed Claim in the Amount of $5 Million Dollars $(5,000,000)*, ECF No. 56.

[7] *Memorandum Decision Denying Motion for Entry of an Order Modifying the Plan of Reorganization*, ECF No. 69.

[8] *Motion: for Reconsideration of Order Denying Motion to Modify Plan of Reorganization*, ECF No. 72.

[9] *Memorandum Decision and Order Denying Motion for Reconsideration*, ECF No. 124.

[10] *Notice of Appeal and Statement of Election*, ECF No. 128.

[11] *Joint Objection of The Plan Administrator and Personal Injury Trustee to Motion of Charles Elliott Anderson Jr. For Entry of An Order (I) Compelling Immediate Payment of Deemed Allowed and Liquidated Claim; (II) Declaring Third Party Releases Unenforceable as Applied to Movant; (III) Staying Pending Appeal; and (IV) Requesting an Evidentiary Hearing*, ECF No. 285.

[12] *Response in Opposition to Joint Objection of Plan Administrator and PI Trustee [Docket No. 285] and Reply in Support of Motion to Compel Payment [Docket No. 277]*, ECF No. 288.

## JURISDICTION

This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the Amended Standing Order of Referral of Cases to Bankruptcy Judges of the United States District Court for the Southern District of New York (M-431), dated January 31, 2012 (Preska, C.J.). This matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2). In addition, pursuant to the Confirmation Order and Plan, this Court has retained jurisdiction over the Chapter 11 Cases and all matters arising out of, or related to, the Chapter 11 Cases and the Plan, including, among other things, to (a) enter and implement such orders as may be necessary or appropriate to execute, implement, or consummate the provisions of the Plan, the Confirmation Order, and any agreements and documents in connection with or contemplated by the Plan, the Confirmation Order, the Purchase and Sale Agreement, and the Disclosure Statement; and (b) enter a final decree closing each of the Chapter 11 Cases. *See* Plan § 13.1.

## BACKGROUND

On August 16, 2022, Endo International plc and seventy-five of its affiliated Debtors each commenced voluntary chapter 11 cases in this Court (the "Chapter 11 Cases") by filing a petition for relief under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code"). On May 25, 2023, and May 31, 2023, certain additional Debtors also commenced Chapter 11 Cases by filing petitions for relief under chapter 11 of the Bankruptcy Code. The Chapter 11 Cases are being jointly administered.

**The Debtors' Plan**

On March 22, 2024, the Court entered the Confirmation Order confirming the Plan and on April 23, 2024 (the "Effective Date"),[13] the Plan became effective. The Plan calls for the appointment of a Plan Administrator on or after the Effective Date by the Debtors and on consent of the Required Consenting Global First Lien Creditors in consultation with the Committees and the Future Claims Representative. *See* Plan § 5.7. Mr. Bartels was appointed and is acting as Plan Administrator. The Plan also called for the creation of the PI Trust and the appointment of the PI Trustee. *See* Plan § 6.8. Mr. Gentle was appointed and is acting as PI Trustee.

Movant timely filed his notarized Personal Injury Opioid Proof of Claim (the "Claim").[14] The Plan classifies the Claim as a Class 7A-PI Opioid Claim. Under the PI TDP framework, holders of Allowed Class 7A-PI Opioid Claims will be paid a simple pro rata share of the distributable proceeds held by the PI Trust based on the total number of timely Allowed PI Opioid Claims. *See* PI TDP § 4.3. The Plan also provides for consensual third-party releases. The "Non-GUC Releases" are relevant herein. *See* Plan § 10.3.[15] The holders of Allowed 7A-PI Opioid

---

[13] *Notice of (I) Entry of Confirmation Order, (II) Occurrence of Effective Date, and (III) the Administrative Expense Claims Bar Date*, Endo ECF No. 4212.

[14] The Claim is annexed at pp. 51-57 of the Motion.

[15] In part, section 10.3 of the Plan states, as follows:

(a) Notwithstanding anything contained in this Plan to the contrary, as of the Effective Date, and to the fullest extent allowed by applicable law, each Non-GUC Releasing Party is deemed to have conclusively, absolutely, unconditionally, irrevocably, and forever released and discharged each Non-GUC Released Party from any and all Released Claims. . . .

Plan § 10.3(a). As relevant, in describing the "Effect of the Releases", the Plan states:

(a) Holders of Trust Channeled Claims shall have the option to grant or opt out of granting, as applicable, the Non-GUC Releases or the GUC Releases, as applicable.

(b) In addition to the amount of any Distribution to be provided by a Trust to a holder of an Allowed Trust Channeled Claim . . . that is a Non-GUC Releasing Party or a GUC Releasing Party, as applicable, such Non-GUC Releasing Party or GUC Releasing Party, as applicable, shall receive an additional payment in exchange for granting or being deemed to grant, as applicable, the Non-GUC Releases or the GUC Releases, as applicable.

Claims who grant the Non-GUC Releases during the Voting Period will receive an additional award that is calculated as four times the Distribution to be made to such holder pursuant to the GUC Trust Document (the "Non-GUC Multiplier"). *Id.* § 4.14(d).[16] Movant did not object to the Plan or Confirmation Order. On his ballot (the "Ballot"),[17] he voted to reject the Plan, but elected to grant the Non-GUC Release by checking a box "to OPT IN to grant the Release contained in Section 10.3 of the Plan to receive an additional payment." *See* Ballot.[18]

By letter dated May 30, 2025, (the "PI Trustee Letter")[19] the PI Trustee notified Movant that he is deemed to have an Allowed PI Opioid Claim and that he timely granted the Release. *Id.* Under the PI TDP, Allowed claims are "eligible to receive payment from the PI Trust." PI TDP § 3.1(b). The Trustee advised Movant that under the Plan, on account of the Claim, he will receive

---

*Id.* § 10.5. The term "Non-GUC Releasing Party" includes the holder of a PI Opioid Claim that votes to reject the Plan and opts in to grant the Non-GUC Releases. *See id.* §1.1.344.

[16] The Plan states, as follows:

> *Incremental Trust Distributions in Exchange for Granting Non-GUC Releases.* The procedures governing Distributions set forth in the PI Trust Documents shall provide for an additional payment by the PI Trust to any holder of an Allowed PI Opioid Claim who is entitled to receive a Distribution from the PI Trust and who grants or is deemed to grant, as applicable, the Non-GUC Releases. Such additional payment from the PI Trust shall be in exchange for such holder granting or being deemed to grant, as applicable, the Non-GUC Releases and shall be calculated by multiplying (i) the amount of any Distribution to be made to such holder pursuant to the PI Trust Documents, by (ii) a multiplier of 4x.

Plan § 4.14(d).

[17] Movant's *Joint (I) Ballot for Voting to Accept or Reject the Second Amended Joint Chapter 11 Plan of Reorganization of Endo International PLC and its Affiliated Debtors and (II) Proxy for Voting on Scheme of Arrangement of Endo International PLC*, is annexed at pp. 62-92 of the Motion.

[18] As relevant, the Ballot contains the following three rows: ACCEPT, REJECT and ABSTAIN. The "REJECT" row contains two boxes. *See* Motion at 68. They read, as follows:

> REJECT (vote AGAINST) the Plan and appoint the Chairperson as special proxy to vote against the Scheme at the relevant Scheme Meeting and any adjournment thereof.

> If you are voting to REJECT the Plan, check this box to OPT IN to grant the Releases contained in Section 10.3 of the Plan to receive an additional payment.

*Id*. Movant checked both boxes.

[19] The PI Trustee Letter is annexed at pp. 97-99 of the Motion.

both a Pro Rata Payment and Additional Award (on account of the Non-GUC Multiplier) resulting in an estimated Award of $1,950 gross and $1,620 net in satisfaction of his Claim. PI Trustee Letter at 2.[20]

## The Motion to Modify Plan

On February 18, 2025, prior to his receipt of the PI Trustee Letter, Movant filed the Motion to Modify Plan. Among other things, he sought to modify the Plan to accept his Claim in the asserted amount of $5 million and direct full payment of the Claim. The Plan Administrator and PI Trustee separately objected to the motion.[21] Movant filed a single response to those objections.[22] The Court conducted a hearing on the motion. On March 30, 2025, the Court entered the Plan Modification Order denying the motion. Without limitation the Court found that, (i) pursuant to section 1141(a) of the Bankruptcy Code, a confirmed plan is a contract binding on all creditors whether they voted for or against the plan; (ii) the Confirmation Order is a final, non-appealable order not subject to Movant's objections which, in any event, are procedurally time-barred and meritless; (iii) Movant lacks standing to modify the confirmed Plan as he is not a plan proponent; (iv) Movant may not revoke the Confirmation Order under section 1144 of the Bankruptcy Code; (v) Movant does not contend that the Confirmation Order was procured by fraud; and (vi) Movant

---

[20] The PI Trustee explained that –

> The estimated net amounts reflected are calculated based on the estimated gross amount minus administration fees. You[r] award may be further reduced by common benefit fees, medical liens (if applicable), and attorney's fees and/or case expenses (if you have an attorney).

PI Trustee Letter at 2.

[21] *Plan Administrator's Objection to Motion to Modify Plan*, ECF No. 59; *Personal Injury Trustee's Response to Charles Elliot Anderson Jr.'s Motion for Modification of the Plan and Reorganization and for Equitable Relief to 1) Acceptance of Allowed Claim, 2) Designate Surviving Victim Status, 3) Establish Separate Segregated Protective Trusts for all "Surviving Victims" and 4) Full Payment of Allowed Claim in the Amount of 5 Million Dollars ($5,000,000)*, ECF No. 60.

[22] *Response Of Charles Elliott Anderson Jr. to Objections to: Motion for Modification of The Plan of Reorganization and for Equitable Relief*, ECF No. 63.

has misplaced his reliance on section 105(a) of the Bankruptcy Code. *See* Plan Modification Order at 11-16.

## The Motion for Reconsideration

On April 8, 2025, Movant filed his Motion for Reconsideration. The Plan Administrator and PI Trustee each objected to the motion.[23] The Court conducted a hearing on the motion. On May 25, 2025, the Court entered the Reconsideration Order denying the motion. Briefly, the Court held that Movant did not point to any controlling law, new evidence, or clear error in the Plan Modification Order. *See* Reconsideration Order at 25. The Court further held that Movant impermissibly sought to raise new arguments and requests for relief in his motion, *id.* at 26-27, and that the evidence Movant submitted in support of his motion did not constitute newly discovered evidence, *id.* at 29-33.

## The Appeal to the District Court

On June 4, 2025, Movant filed a notice of appeal of the Reconsideration Order (the "Appeal").[24] The Appeal is currently pending before the United States District Court for the Southern District of New York (the "District Court").[25]

## The Motion[26]

In the Motion, Movant raises four issues. First, he seeks entry of an order compelling the PI Trustee to make immediate payment of his Claim in full, irrespective of the operative provisions

---

[23] *Personal Injury Trustee's Response to Charles Elliot Anderson Jr.'s Motion for Reconsideration,* ECF No. 112*; Plan Administrator's Objection to Motion for Reconsideration*, ECF No. 113.

[24] *Notice of Appeal and Statement of Election*, ECF No. 128.

[25] The Plan Administrator and PI Trustee contend that the District Court should construe the Appeal to extend to both the Plan Modification Order and the Reconsideration Order.

[26] The exhibits to the Motion include Movant's medical records, Motion Exs. A-F; the Claim, several documents supporting the Claim, and the Release, *id.* Exs. G-I; correspondence between Movant and the PI Trustee, *id*. Exs. K, P, Q; and annotated Court transcripts from various hearings that have taken place in this case, *id.* Exs. M-O.

in the Plan or PI TDP. Motion at 2. He argues that pursuant to section 502(a) of the Bankruptcy Code, the Claim is deemed allowed for its full amount, that payment of the Claim is "ministerial, not adjudicative" and the Trustee is attempting to "unilaterally reduce the claim." *Id.* at 2-3. Next, he asks the Court to declare that the Release is unconstitutional and unenforceable as applied to him. *Id.* at 13-14. He says it is a "legal nullity" because it runs afoul of *Harrington v. Purdue Pharma, L.P.*, 603 U.S. 204 (2024) ("*Purdue Pharma*"). He also says his consent to the Release was "illusory and invalid" because it was "not consensual, but a quid pro quo," he gave it "under extreme distress," and his recovery under the Plan is "de minimis." *Id.* at 13-14. He argues that the Release is an unconstitutional taking of property in violation of the Fifth Amendment. *Id.* at 4. Third, Movant requests the Court to impose a stay of his Appeal in the District Court. *Id.* at 5. He says this Court has "primary jurisdiction, to rule on the dispositive issues of claim allowance and the impact of supervening law," and that a "stay is the most efficient course." *Id.* Finally, he requests this Court to hold an evidentiary hearing on the PI Trustee's alleged bad faith. *Id.* at 6. He maintains such a hearing is required to "question the Trustee under oath regarding his extrajudicial reduction of the claim and his refusal to provide a financial accounting." *Id.*

**The First Supplement**

Movant seeks to "correct the docket regarding the [Motion] and provide[] notice of his intent to file a comprehensive Motion to Vacate the Confirmation Order." First Supplement at 1-2. He argues that the Court mischaracterized the Motion by docketing it as a "Motion to Approve." *Id.* at 2. He complains that this creates a "materially false impression" of his position, because he objects to the closing of the Chapter 11 Cases and does not approve of the Plan or the Release. *Id.* He asserts that the Court spoliated the record by not docketing certain evidentiary exhibits, and that the Court improperly formatted the filing on the docket and "uploaded [it] in a manner that

renders it largely illegible . . . . This improper formatting prejudices Movant's ability to present his case and makes his serious legal motion appear unprofessional or farcical." *Id.* He asks the Court to correct the docket entry, upload the omitted exhibits, and correct the Motion's orientation and formatting. *Id.* at 2-3.

## The Objection

The Objectors label the Motion as "the latest in serial attempts by [Movant] to relitigate the Debtors' confirmed Fourth Amended Plan and treatment of his claim." Objection ¶ 1. They contend the Court must deny the Motion because the matters at issue in the Motion are subject to the Appeal pending in the District Court and, as such, the Court lacks subject matter jurisdiction to consider them. *Id.* ¶ 11. They also contend that Movant's challenge to the Release is unwarranted and, in any event, that he has waived any right to challenge it. *Id.* ¶¶ 14-16. They characterize Movant's motion practice as "vexatious and frivolous" and criticize it as a "drain on the resources of the Plan Administrator and PI Trustee, [that] should not be permitted to continue." *Id.* ¶ 1. They ask the Court to deny the Motion, with prejudice, and to caution Movant against seeking to further delay these Chapter 11 Cases. *Id.* ¶ 2. They also ask the Court to enter an order limiting further pleadings by Movant. *Id.* at 10.

## The Response

Movant asks the Court to strike the Objection "as a non-responsive legal novelty." Response at 1. He argues that it is nonresponsive to several issues he raised in the Motion, including the "illegal release text," the "sanitized record where Exhibits F2 and F4 were blacked out," and "medical records" proving that the Debtors' products were "forced" upon him after he was diagnosed as an addict. *Id.* at 4. He offers a timeline which, he argues, "establishes the irrefutable 'Chain of Gross Negligence.'" *Id.* at 5-6.

Movant argues that the Appeal does not divest this Court of jurisdiction over matters raised in the Motion, because, in contrast to the Motion to Modify Plan, which challenges the legality of the Plan, the Motion seeks to enforce a specific claim and compel the payment of a debt admitted as "approved." *Id.* at 7. He states that the Motion is a "Motion to Compel," and not a motion for modification, because it is a "demand. It is non-discretionary." *Id.* at 8. He further argues that the primary issue in the Motion is the "implementation of the Plan," *id.* at 9, and that he "further designates the suppression of Exhibits F2 and F4 as a primary Issue on Appeal," *id.* In section IV of the Response, he appears to be designating certain issues before this Court as issues on appeal. *Id.* at 10.[27]

Movant raises several arguments concerning the evidence that he submitted in support of the Motion. He complains some of it was suppressed because it was not filed on the public docket, that the Objectors failed to address certain exhibits, and that certain exhibits support his claims of gross negligence of the Debtors. *Id.* at 7-8. He restates the arguments first set forth in the Motion concerning the unconstitutional "taking" of property rights, and the Court's equitable powers under *Pepper v. Litton,* 308 U.S. 295 (1939), to "sift the circumstances" regarding purported "fiduciary abuse." *Id.* at 9. He further restates arguments raised in the First Supplement concerning the spoliation of evidence, arguing that the Court not docketing certain exhibits constitutes spoliation. *Id.* at 10.

---

[27] The Response reads, as follows:

IV. ISSUES ON APPEAL ANALYSIS

Primary Issue: Whether the suppression of material evidence (Exhibits F2/F4) by court officers constitutes a violation of Due Process and Spoliation, and whether Movant was denied his right to a complete Record on Appeal.

Secondary Issue: Whether the Trustee's Dec 13th admission ("Claim Approved") constitutes a Waiver of their Objection [Docket 285].

Response at 10.

To summarize, in the Response, Movant asks the Court to:

1. Deny the Objection as non-responsive and frivolous.

2. Order the immediate inclusion of Exhibits F2 and F4 onto the public docket to remedy the Spoliation of Evidence and ensure a complete Record on Appeal.

3. Declare the Claim "deemed allowed" in the amount of $5,000,000.00.

4. Compel the PI Trustee to immediately pay the full allowed amount of the Claim based on their admission that the Claim is "Approved."

Response at 10-11.

**The Second Supplement**

Movant contends that the Release contains deceptive language which led him to believe that, under the Plan, he would receive four times the value of his Claim. Second Supplement ¶ 1. He understood that in granting the Release, he would receive $20 million on account of his Claim. *Id.* He says the Release was procured by "deceptive solicitation" in violation of section 1125 of the Bankruptcy Code. *Id.* ¶ 2. He also contends that the Release is identical to the release the Supreme Court struck down in *Purdue Pharma*. *Id.* ¶ 3. Next, he argues that the Objectors are judicially estopped from arguing that the Court is divested of jurisdiction because they are requesting an order limiting further pleadings by Movant. *Id.* ¶¶ 4-5. He asserts that "[b]y requesting an affirmative Sanctions Order, they have Judicially Admitted that this Court retains active jurisdiction over Movant and Claim." *Id.* ¶ 5. He further states that the PI Trustee has admitted his Claim has a value of $5 million and has waived arguments to the contrary. *Id.* ¶¶ 6-8. Movant argues that by failing to deny "a single factual allegation or calculation in the Proposed Order" the Objectors have admitted those facts under Rule 8(b)(6) [of the Federal Rules of Civil Procedure ("Federal Rule 8(b)(6)")]." *Id.* ¶¶ 9-10. He reasserts that the Court is spoliating evidence by failing to docket certain exhibits, and requests correction of the record under Rule 8009 of the

Federal Rules of Bankruptcy Procedure (each, a "Bankruptcy Rule") to include the exhibits. *Id.* ¶¶ 11-12. Finally, he requests that, if the Court finds the Appeal limits its authority, the Court enter an indicative ruling pursuant to Bankruptcy Rule 8008(a)(3) stating that the Court would grant the Motion if the District Court were to remand the matter. *Id.* ¶ 13.

## ANALYSIS

Movant seeks an order of the Court (i) directing immediate payment of the Claim, in full; (ii) declaring that the Release is unconstitutional and unenforceable as applied to him; and (iii) staying the Appeal in the District Court. He also asks the Court to conduct an evidentiary hearing on the PI Trustee's alleged bad faith in dealing with his Claim, and to review certain evidentiary matters.

As Movant is proceeding pro se, the Court construes his pleadings liberally and interprets them to raise the strongest arguments they suggest. *See Rosa v. Doe*, 86 F.4th 1001, 1008 (2d Cir. 2023); *see also Chinniah v. FERC*, 62 F.4th 700, 702 (2d Cir. 2023) ("As a pro se plaintiff, [Movant] is entitled to liberal construction of his pleadings and briefs."). Even in that light, as explained below, Movant is not entitled to the relief he is seeking in the Motion, and the supplements to the Motion.

## Payment of the Claim

The Plan is "a contract binding on all creditors whether they voted for or against the Plan." Plan Modification Order at 11. Although Movant voted to reject the Plan, he is bound by it. *Id.* "The distributions that creditors receive in chapter 11 are determined by the provisions of a confirmed plan of reorganization." *In re Manhattan Jeep Chrysler Dodge, Inc.*, 602 B.R. 483, 491 (Bankr. S.D.N.Y. 2019); *accord In re Revere Copper & Brass, Inc.*, 32 B.R. 577, 582 (Bankr. S.D.N.Y. 1983) ("Prepetition creditors may be paid or recover on their claims in a Chapter 11 case

only by means of a distribution under a confirmed plan of reorganization."). The Plan calls for the payment of the claims of the sub-trust beneficiaries, like Movant, in accordance with the applicable PI TDP. *See generally* Plan § 6.7. Movant holds an allowed Class 7A-PI Opioid Claim. The Plan channels payment of those claims through the PI Trust. *See* Plan § 4.14. In satisfaction of his Claim, Movant is entitled to receive a pro rata share of the distributable proceeds held by the PI Trust based on the total number of timely Allowed PI Opioid Claims. PI TDP § 4.3.

Movant argues that by operation of Bankruptcy Rule 3001(f) and section 502(a) of the Bankruptcy Code, the Claim is a liquidated debt with the same legal force as a final judgment. Motion at 13. He contends that the PI Trustee's "job" is to pay the Claim from the PI Trust Funds. *Id.* He complains that the PI Trustee's subsequent purported attempt to unilaterally reduce this liquidated debt pursuant to the PI Trustee Letter is an extrajudicial act, void of legal authority. *Id.* He asserts that "[t]he Trustee's refusal to pay this liquidated debt is a breach of his most basic fiduciary duty and a direct violation of the Bankruptcy Code. This Court must compel him to perform his non-discretionary legal duty." *Id*. He seeks an order of the Court (i) declaring that his Claim is a "deemed allowed" claim under section 502(a) of the Bankruptcy Code, constituting a liquidated debt of the estate in the amount of $5 million, and (ii) directing immediate payment of the Claim in full, irrespective of the terms of the Plan. *Id.* at 18. That is precisely the same relief he sought in the Motion to Modify Plan and that is at issue in the Appeal. The Court denies the request for relief, as it lacks jurisdiction to consider the matter.

In general, "[t]he filing of a notice of appeal is an event of jurisdictional significance—it confers jurisdiction on the court of appeals and divests the district court of its control over those aspects of the case involved in the appeal." *United States v. Rodgers,* 101 F.3d 247, 251 (2d Cir. 1996) (quoting *Griggs v. Provident Consumer Disc. Co.*, 459 U.S. 56, 58 (1982)). "The same legal

principle applies to appeals of bankruptcy court orders." *Dicola v. Am. S.S Owners Mut. Prot. & Indem. Ass'n, Inc. (In re Prudential Lines, Inc.)*, 170 B.R. 222, 243 (S.D.N.Y. 1994); *see also In re Millenium Global Emerging Credit Master Fund Ltd.,* 471 B.R. 342, 348 (Bankr. S.D.N.Y. 2012) ("[t]he filing of an appeal divests a bankruptcy court of jurisdiction over all aspects of the case that are the subject of the appeal."). In its simplest terms, "[t]he divestiture doctrine . . . provides that the filing of an appeal divests the lower court of its control over the issue or matter that is on appeal." *In re Sabine Oil & Gas Corp.*, 548 B.R. 674, 679 (Bankr. S.D.N.Y. 2016) (internal citations omitted). The rule "is founded on 'concerns of efficiency' and the desire to protect 'the integrity of the appellate process.'" *Cibro Petroleum Products, Inc. v. City of Albany (In re Winimo Realty Corp.),* 270 B.R. 99, 105 (S.D.N.Y. 2001) (citations omitted).

Still, notwithstanding the pendency of an appeal of its order, absent a stay of the order, a bankruptcy court has jurisdiction to enforce the order. *See Coleman v. Tollefson*, 575 U.S. 532 (2015) ("Unless a court issues a stay, a trial court's judgment (say, dismissing a case) normally takes effect despite a pending appeal."); *In re 491 Bergen St. Corp.*, No. 25-10091, 2025 WL 2416493, at *7 (Bankr. S.D.N.Y. Aug. 20, 2025) ("[W]hile an appeal of an order is pending the bankruptcy court is not divested of jurisdiction to enforce or implement the challenged order."). "This is true because in implementing an appealed order, the court does not disrupt the appellate process so long as its decision remains intact for the appellate court to review." *In re Prudential Lines, Inc.*, 170 B.R. at 243. Courts have "recognized a distinction in the divestment of jurisdiction between acts undertaken to enforce the judgment and acts which expand upon or alter it; the former being permissible and the latter prohibited." *Id*. (citing *N.L.R.B. v. Cincinnati Bronze, Inc.*, 829 F.2d 585, 588 (6th Cir. 1987)). "Thus, it has long been held that in the absence of a stay pending

appeal of the plan confirmation, the bankruptcy court is entitled to implement the plan." *Id*. at 244 (collecting cases).

Movant runs afoul of the divestiture doctrine. His contention that the Motion is a "Motion to Compel," primarily concerned with the "implementation of the Plan," Response at 9, is belied by the record. He does not seek to enforce the Plan. He seeks to compel the PI Trustee to satisfy his Claim apart from the terms of the Plan. Motion at 7. In the Plan Modification Order and Reconsideration Order, the Court rejected Movant's request for that relief. *See* Plan Modification Order at 13 ("[Movant] seeks to modify the Plan to provide for full payment of his claim . . . ."). That issue is on appeal before the District Court. The Court lacks jurisdiction to consider it. The Court denies Movant's request for payment of his Claim, in full.

### **Enforcement of the Release**

Movant contends that the PI Trustee's only "defense" for not paying his Claim in full is his purported "consent" to the Release, and that the defense fails as a matter of law. He argues that, as applied to him, the Release is a legal nullity because: (i) it is nonconsensual, coercive and barred by application of *Purdue Pharma,* (ii) the purported "consent" is invalid under this district's "de minimis recovery" exception enunciated in *In re Spirit Airlines, Inc.* 668 B.R. 689 (Bankr. S.D.N.Y. 2025) ("*Spirit*"), and (iii) it is unconstitutional, as it constitutes a taking of Movant's $5 million vested property right in violation of the Fifth Amendment. Motion at 13-15. The validity of the Release is not among the issues subject to the Appeal before the District Court. Accordingly, the Court can exercise jurisdiction over that aspect of the Motion.

Movant asserts that the Release is not consensual because he was forced to opt-in to the Release "under extreme duress" in order to receive the Non-GUC Multiplier. *Id.* at 13-14. However,

in the Confirmation Order the Court found that the Release is consensual,[28] and approved the Release.[29] The doctrine of *res judicata*, or claim preclusion, holds that a "final judgment on the merits of an action precludes the parties or their privies from relitigating issues that were or could have been raised in that action." *Sikorsky v. City of Newburgh*, 136 F.4th 56, 62 (2d Cir. 2025). To determine whether *res judicata* bars a subsequent action, the Court considers whether "(1) the previous action involved an adjudication on the merits; (2) the previous action involved the [same parties] or those in privity with them; [and] (3) the claims asserted in the subsequent action were, or could have been, raised in the prior action." *Id.* at 62; *see also Brown Media Corp. v. K&L, Gates LLP*, 854 F.3d 150, 157 (2d Cir. 2017) (*Res judicata* bars a subsequent action when (i) there was a prior decision that was a final judgment on the merits; (ii) the litigants are the same parties or their privies; (iii) the judgment was entered by a court of competent jurisdiction; and (iv) the causes of action are the same).

A bankruptcy court's "order of confirmation is treated as a final judgment with *res judicata* effect." *Baeshen v. Arcapita Bank B.S.C.(c) (In re Arcapita Bank B.S.C.(c))*, 520 B.R. 15, 21 (Bankr. S.D.N.Y. 2014) (quoting *In re Indesco Int'l Inc.*, 354 B.R. 660, 664 (Bankr. S.D.N.Y. 2006)); *see also Silverman v. Tracar, S.A. (In re Am. Preferred Prescription, Inc.)*, 255 F.3d 87, 92 (2d Cir. 2001) ("The confirmation of a plan in a Chapter 11 proceeding is an event comparable to the entry of final judgment in an ordinary civil litigation."). Moreover, pursuant to section

---

[28] *See* Confirmation Order ¶ Q ("The third party releases contained in Sections 10.3 and 10.4 of the Plan are consensual. All parties are bound by such releases have been given due and adequate notice of such release, and sufficient opportunity and instruction, based on the facts and circumstances of the Chapter 11 Cases, to elect to (i) opt in to such releases if they rejected the Plan, (ii) opt in to or opt out of such releases, as applicable, if they abstained from voting on the Plan or (iii) opt out of such releases if they were deemed to reject the Plan.").

[29] *See* Confirmation Order ¶ 29 ("The Releases, discharges, injunctions, exculpations, and related provisions set forth in Article X of the Plan are hereby approved and authorized in all respects, are so ordered, and shall be immediately effective on the Effective Date without further notice to any party or order or action from the Bankruptcy Court or any other party.").

1141(a) of the Bankruptcy Code, a confirmed plan is binding on all parties. *Eastern Air Lines, Inc. v. Brown & Williamson Tobacco Corp. (In re Ionosphere Clubs, Inc.)*, 262 B.R. 604, 612 (S.D.N.Y. 2001). The "finality interests of *res judicata* are particularly important in the bankruptcy context, where numerous claims and interests are gathered, jostled, and are determined and released." *In re Celsius Network LLC*, 659 B.R. 850, 863 (S.D.N.Y. 2024) (internal quotation marks omitted).

At issue in applying the doctrine of res judicata is "whether the party could or should have asserted the claim in the earlier proceeding." *Celli v. First Nat'l Bank (In re Layo)*, 460 F.3d 289, 292 (2d Cir. 2006). "When a bankruptcy court enters a confirmation order, it renders a final judgment, which, like any other final judgment, has *res judicata* effect, bar[ring] all challenges to the plan that could have been raised. Challengers must instead raise any issues beforehand and by objecting to confirmation." *Wyse v. Metropolitan Comm'l Bank*, No. 24 Civ. 9108, 2025 WL 2208161, at *7 (S.D.N.Y. Aug. 4, 2025) (citation and internal quotation marks omitted). Had Movant wished to challenge any aspect of the Release, he could have objected to the Plan, or timely appealed the Confirmation Order.[30]  He took no such action and is barred from raising those matters now.

In any event, there is no merit to Movant's contentions. Movant argues that that in *Purdue Pharma,* the Supreme Court held that the Bankruptcy Code does not authorize a court to approve a Chapter 11 plan that grants nonconsensual releases of direct claims against non-debtors. Motion

---

[30] Bankruptcy Rule 8002 governs the time for filing a notice of appeal, specifying that litigants have "14 days after the judgment, order, or decree to be appealed is entered" to file an appeal.  Fed. R. Bankr. P. 8002(a)(1); *see Sterling v. Carlebach (In re Sterling)*, 690 Fed. Appx. 747, 747 (2d Cir. 2017) (summary order) ("An appeal to the district court from an order of the bankruptcy court must be made within 14 days.").  It is settled that an appellant's failure to timely file an appeal deprives the appellate court of jurisdiction over the appeal.  *See Siemon v. Emigrant Savs. Bank (In re Siemon)*, 421 F.3d 167, 169 (2d Cir. 2005) ("[I]n the absence of a timely notice of appeal . . . the district court is without jurisdiction to consider the appeal."); *accord Tze Wung Consultants, Ltd. v. Bank of Aroda (In re Indu Craft, Inc.)*, 749 F.3d 107, 114-16 (2d Cir. 2014).

at 13-14. He contends that rationale applies here, because he is a non-consenting creditor, as he voted to reject the Plan, and that the Plan's mechanism, which then forced him to "opt-in" to the Release to receive a 4x multiplier is a direct violation of *Purdue Pharma's* prohibition against binding non-consenting creditors. *Id.*

Movant misplaces his reliance on *Purdue Pharma.* There, the Supreme Court held that "the bankruptcy code does not authorize a release and injunction that, as part of a plan of reorganization under Chapter 11, effectively seeks to discharge claims against a nondebtor without the consent of affected claimants." *Purdue Pharma*, 603 U.S. at 227. In the wake of that determination, it is clear that the Bankruptcy Code does not authorize nonconsensual third-party releases in Chapter 11 reorganization plans. *See In re Red River Talc LLC*, 670 B.R. 251, 259 (Bankr. S.D. Tex. 2025) ("The plan also cannot be confirmed because it contains impermissible nonconsensual third-party releases."). However, in reaching that determination, the Supreme Court emphasized "[n]othing in what we have said should be construed to call into question *consensual* third-party releases offered in connection with a bankruptcy reorganization plan[.]" *Purdue Pharma*, 603 U.S. at 227. A consensual third-party release occurs when the affected parties explicitly or implicitly agree to release the nondebtor from liability. That is what occurred here, as Movant elected to opt in to the Release, even as he voted to reject the Plan. The Release is consensual. *See* Confirmation Order ¶ Q. It is not barred by *Purdue Pharma*. *See In re Purdue Pharma L.P.,* No. 19-23649, 2025 WL 3246149, at *21 (Bankr. S.D.N.Y. Nov. 20, 2025) ("These sorts of consensual releases are specifically carved out of the [*Purdue Pharma*] decision . . . ."); *accord Spirit*, 668 B.R. at 702-08 (Bankr. S.D.N.Y. 2025); *In re Robertshaw US Holding Corp.*, 662 B.R. 300, 323 (Bankr. S.D. Tex. 2024) ("Nothing is construed to question consensual third-party releases offered in connection with a chapter 11 plan."); *In re Smallhold, Inc.*, 665 B.R. 704, 717 (Bankr. D. Del.

2024) ("The Court is not aware, however, of any court that has found that a creditor cannot *consensually* release a claim against a third-party under a debtor's plan of reorganization."). The Plan utilizes an opt-in mechanism, and a "clearer form of 'consent' can hardly be imagined." *In re Chassix Holdings, Inc.*, 533 B.R. 64, 80 (Bankr. S.D.N.Y. 2015).

Movant asserts that the Release is invalid under a purported "de minimis recovery" exception to third-party releases set forth in *Spirit*. Motion at 4. He contends the Release is invalid because, even with application of the Non-GUC Multiplier, the payment on account of his Claim is much lower than the Claim's face value. *Id.* As relevant, at issue in *Spirit* was whether third-party releases under the debtor's plan were consensual where they were granted using an opt-out mechanism. *Spirit,* 668 B.R. at 708. The Court's only reference to a "de minimis" recovery is stating that "these cases are not a situation where the affected parties have little or no economic incentive to pay attention to the bankruptcy, such as where a creditor is receiving no recovery or a *de minimus* one." *Id. Spirit* is inapposite to this case, as Debtors used an "opt in" mechanism under the Plan.

Finally, Movant argues that "[t]he attempt to extinguish [his Claim] for $1,620 is a taking without just compensation, violating the Fifth Amendment." Motion at 4. "While Congress's power to legislate on bankruptcy is subject to the takings limitations of the Constitution, *see Hanover Nat'l Bank v. Moyses*, 186 U.S. 181, 192 . . . (1902), this case does not involve a taking of property from any claimant. Indeed, the only rights given up are done so in the form of releases which, consistent with the Supreme Court's decision in [*Purdue Pharma*], is being done with consent." *In re Purdue Pharma L.P.*, 2025 WL 3246149, at *23. The Plan does not extinguish Movant's Claim. Movant is being given his pro rata share of the recovery shared by claimants in his class and according to the Plan. The Plan does not run afoul of the Fifth Amendment.

## Staying the Appeal

Movant seeks an order staying the District Court from proceeding with the Appeal, pending resolution of the Motion. Motion at 15-16. As support, he relies on Bankruptcy Rule 8007(a)(1). That rule allows a party to move the bankruptcy court for a "stay of a judgment, order, or decree of the bankruptcy court pending appeal." Fed. R. Bankr. P. 8007(a)(1)(A). Stays pending appeal under Bankruptcy Rule 8007 "are the exception, not the rule, and are granted only in limited circumstances." *See In re LATAM Airlines Grp. S.A.*, No. 20-11254, 2022 WL 2657345, at *4 (Bankr. S.D.N.Y. July 8, 2022) (quoting *In re Brown*, No. 18-10617, 2020 WL 3264057, at *5 (Bankr. S.D.N.Y. June 10, 2020)). The party seeking a stay pending appeal "carries a heavy burden." *Id.* (quoting *In re Adelphia Commc'ns Corp.*, 333 B.R. 649, 659 (S.D.N.Y. 2005)).

Movant misplaces his reliance on Bankruptcy Rule 8007(a)(1). By its terms, it authorizes the Court to stay specific judgments, orders or decrees pending appeal. It does not authorize this Court to enjoin the prosecution of the Appeal in the District Court. There is no authority for this Court to do so. Bankruptcy Rule 8007(e) provides that "[d]espite Rule 7062—but subject to the authority of the district court, BAP, or court of appeals—while the appeal is pending, the bankruptcy court may: (1) suspend or order the continuation of other proceedings in the case; or (2) issue any other appropriate orders during the pendency of an appeal to protect the rights of all parties in interest." Fed. R. Bankr. P. 8007(e). It allows the Court to suspend other proceedings in the bankruptcy case, or even the entire bankruptcy case pending appeal. *In re Wellington,* 631 B.R. 833, 839 (Bankr. M.D.N.C. 2021). It does not authorize the Court to enjoin proceedings in the appellate court. The Court denies Movant's request that it stay prosecution of the Appeal.

**The Evidentiary Hearing**

Movant requests an evidentiary hearing to "develop a factual record concerning the PI Trustee's breach of fiduciary duty and bad-faith conduct." Motion at 6. This request stems from the trustee's alleged "extrajudicial reduction of the claim and his refusal to provide a financial accounting." *Id.* However, the PI Trustee Letter is clear that the PI Trustee did not purport to reduce Movant's Claim. He merely calculated the amounts payable on account of the Claim as an Allowed Class 7A-PI Opioid Claim under the Plan and the PI Trust Distribution Procedures, as supplemented by the Non-GUC Multiplier. The Court rejects Movant's demand for an evidentiary hearing.

**The Supplements**

The Court denies Movant's requests for relief in the Supplements. There is no merit to Movant's request to retitle the Motion on the Court's docket. It is a well settled principle of law that the Court "possesses the inherent power to control its own docket . . . ." *Goldstein v. Time Warner New York City Cable Grp.*, 3 F. Supp. 2d 423, 437 (S.D.N.Y. 1998) (citing *Landis v. North Am. Co.,* 299 U.S. 248, 254–55 (1936)). As Movant served the Motion on all parties in interest, *see* Motion at 19, all parties in interest were sufficiently notified of Movant's requests for relief and argument. The Court will not amend the title entry of the Motion on the Court's docket. For the same reasons, the Court shall not docket the omitted exhibits submitted by Movant.[31] Such exhibits were not docketed by the Court pursuant to Bankruptcy Rule 9037 and Local Bankruptcy Rule 9037-1. All parties in interest have received a copy of the omitted exhibits, as has the Court. The omission of the exhibits falls well without the limits of spoliation, which concerns "both the

---

[31] Exhibit F-2 annexed to the Motion was a medical record of Movant. Exhibit F-4 annexed to the Motion was to an image of an injury sustained by Movant.

destruction and the 'significant alteration of evidence.'" *Mazzei v. Money Store*, No. 01CV5694,

2014 WL 3610894, at *2 (S.D.N.Y. July 21, 2014) (quoting *W. v. Goodyear Tire & Rubber Co.,*

167 F.3d 776, 779 (2d Cir. 1999)). The evidence in this case has not been destroyed or altered;

instead, the Court is refraining from docketing certain exhibits. As to the orientation of the

documents docketed by the Court, the Court entered such documents in the manner they were

received.

Movant next requests that, if the Court finds the Appeal limits its jurisdiction, that the Court

enter an indicative ruling pursuant to Bankruptcy Rule 8008(a)(3). Bankruptcy Rule 8008 states:

> (a) Motion for Relief Filed When an Appeal Is Pending; Bankruptcy Court's
> Options. If a party files a timely motion in the bankruptcy court for relief that
> the court lacks authority to grant because an appeal has been docketed and is
> pending, the bankruptcy court may:
>
>> (1) defer considering the motion;
>>
>> (2) deny the motion;
>>
>> (3) state that it would grant the motion if the court where the appeal is
>> pending remands for that purpose; or
>>
>> (4) state that the motion raises a substantial issue.
>
> (b) Notice to the Court Where the Appeal Is Pending. If the bankruptcy court
> states that it would grant the motion or that the motion raises a substantial issue,
> the movant must promptly notify the clerk of the court where the appeal is
> pending.
>
> (c) Remand After an Indicative Ruling. If the bankruptcy court states that it
> would grant the motion or that the motion raises a substantial issue, the district
> court or BAP may remand for further proceedings but retains jurisdiction unless
> it expressly dismisses the appeal. If the district court or BAP remands but
> retains jurisdiction, the parties must promptly notify the clerk of that court when
> the bankruptcy court has decided the motion on remand.

Fed. R. Bankr. P. 8008. The rule "provides a procedure for the issuance of an indicative ruling

when a bankruptcy court determines that, because of a pending appeal, the court lacks jurisdiction

to grant a request for relief that the court concludes is meritorious or raises a substantial issue."

Fed. R. Bankr. P. 8008 Advisory Committee Note to 2014 Amendment. It applies "when a

postjudgment motion—such as a motion for relief from judgment under Civil Rule 60(b) made

more than 14 days after entry of the judgment which does not suspend the time for filing a notice

of appeal is made in the bankruptcy court at a time when a pending appeal has deprived the

bankruptcy court of jurisdiction to decide the motion." 10A COLLIER ON BANKRUPTCY, ¶ 8008.01,

p. 8008–2 (16th Ed. 2025).

The decision whether to defer, deny or issue an indicative ruling under Rule 8008 is within

the Court's discretion. *Fairfield Sentry Ltd. v. Theodoor GGC Amsterdam (In re Fairfield Sentry

Ltd.)*, No. 10-13164, 2020 WL 4813565, at *11 (Bankr. S.D.N.Y. Aug. 10, 2020), *aff'd sub nom.

Fairfield Sentry Ltd. (In Liquidation) by & through Krys v. Citibank, N.A. London*, 630 F. Supp.

3d 463 (S.D.N.Y. 2022), *aff'd in part, rev'd in part sub nom. In re Fairfield Sentry Ltd.*, 147 F.4th

136 (2d Cir. 2025). The Motion is not a post judgment motion under Rule 60(b) of the Federal

Rules of Civil Procedure; it has no merit and does not raise a substantial issue for resolution.

Accordingly, the Court denies Movant's request for relief under Bankruptcy Rule 8008(a)(3). *Cf.

Geron v. Holding Capital Grp., Inc. (In re PBS Foods, LLC)*, 549 B.R. 586, 597 (Bankr. S.D.N.Y.

2016) (denying relief under Rule 8008(a)(2) where debtor failed to establish grounds for relief

under Rule 60(b)), *aff'd*, No. 09-15629, 2017 WL 1167377 (S.D.N.Y. Mar. 28, 2017), *aff'd*, 718

F. App'x 89 (2d Cir. 2018) (summary order).

Movant argues that by failing to deny "a single factual allegation or calculation in the

Proposed Order" the Objectors have admitted those facts under Federal Rule 8(b)(6). Second

Supplement ¶¶ 9-10. That rule states:

> *Effect of Failing to Deny.* An allegation--other than one relating to the amount
> of damages--is admitted if a responsive pleading is required and the allegation

is not denied. If a responsive pleading is not required, an allegation is considered denied or avoided.

Fed. R. Civ. P. 8(b)(6). Rule 8 "establishes the standard for pleadings." *Grimes v. Fremont Gen. Corp.*, 933 F. Supp. 2d 584, 595 (S.D.N.Y. 2013). Bankruptcy Rule 7008 makes Rule 8 applicable in adversary proceedings. *See* Fed. R. Bankr. P. 7008. The matter before the Court is not an adversary proceeding. Moreover, "[m]otions, declarations and affidavits are not pleadings." *Granger v. Gill Abstract Corp.,* 566 F.Supp.2d 323, 335 (S.D.N.Y.2008) (citing Fed R. Civ. P. 7(a)). The Motion is not a pleading that requires denials. The Court rejects Movant's claim for relief under Federal Rule 8(b)(6).

### The Objectors' Request for an Injunction

The Objectors contend that Movant has demonstrated a history of vexatious and meritless litigation and is causing undo delay in resolving the merits of the Appeal. They ask the Court to deny the Motion with prejudice, and caution Movant against seeking to further delay these Chapter 11 Cases. Objection ¶ 2. Under section 105(a) of the Bankruptcy Code,[32] the Court has the power, to enjoin/limit vexatious litigation. *See In re Martin–Trigona,* 737 F.2d 1254, 1262 (2d Cir. 1984) (court has "the power and the obligation to protect the public and the efficient administration of justice from [a vexatious litigant's] litigious propensities"); *accord Ezeh v. McDonald*, No. 13-CV-6563, 2015 WL 260714, at *10 (W.D.N.Y. Jan. 21, 2015). In examining whether to issue a filing injunction, the Court examines

> (1) the litigant's history of litigation and in particular whether it entailed vexatious, harassing or duplicative lawsuits; (2) the litigant's motive in pursuing the litigation, e.g., does the litigant have an objective good faith expectation of prevailing?; (3) whether the litigant is represented by counsel;

---

[32] Section 105(a) of the Bankruptcy Code gives the Court equitable power to "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of [the Bankruptcy Code]" and permits the Court to take any action "necessary or appropriate to enforce or implement court orders or rules, or to prevent an abuse of process." See 11. U.S.C. § 105(a).

(4) whether the litigant has caused needless expense to other parties or has posed an unnecessary burden on the courts and their personnel; and (5) whether other sanctions would be adequate to protect the courts and other parties.

*Buczek v. Nationstar Mortg. LLC (In re Buczek)*, No. 22-1920, 2023 WL 6618901, at *3–4 (2d Cir. Oct. 11, 2023) (summary order) (quoting *Safir v. U.S. Lines, Inc.*, 792 F.2d 19, 24 (2d Cir. 1986)).

There is no merit to the Motion. However, the Objectors have made no effort to demonstrate that they are entitled to relief under section 105. The Court denies their request to deny the Motion with prejudice. Nevertheless, the Court cautions Movant against filing meritless litigation in these Chapter 11 Cases.

## **CONCLUSION**

Based on the foregoing, the Court denies the Motion.

IT IS SO ORDERED.

Dated: January 5, 2026
    New York, New York

/s/ *James L. Garrity, Jr.*

Honorable James L. Garrity, Jr.
United States Bankruptcy Judge